UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CELTIC WOMAN LTD., ) | **JUDGE GRIESA** |
| Plaintiff, ) | **08  CV  0066** |
| v. ) | Civil Action No. _____ |
| CELTIC THUNDER LTD., ) CELTIC MAN LTD., SHARON ) BROWNE, WLIW LLC, ) ALIGN ENTERTAINMENT GROUP LLC, ) and GUSTAVO SAGASTUME, ) | **COMPLAINT** |
| Defendants. ) | **JURY TRIAL DEMANDED** |

Plaintiff Celtic Woman Ltd. brings this action for infringement of the federally registered trademark CELTIC WOMAN in violation of § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114; false designation of origin in violation of § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a); trademark dilution in violation of § 43(c) of the Federal Trademark Act, 15 U.S.C. § 1125(c); cybersquatting in violation of § 43(d) of the Federal Trademark Act, 15 U.S.C. § 1125(d); and trademark infringement, unfair competition and trademark dilution under laws of the State of New York. Plaintiff's claims arise out of Defendants' unlawful use of the trademark CELTIC MAN and the trademark CELTIC WOMAN, and Defendants' unlawful registration and use of domain names containing the trademark CELTIC MAN. Plaintiff seeks a preliminary and permanent injunction, damages, and attorney's fees for violation of its statutory and common law rights.

## PARTIES

1.      Plaintiff Celtic Woman Ltd. is a corporation organized and existing under the laws of Ireland with an office and place of business at 32 Lower Lesson Street, Dublin 2, Ireland.

Celtic Woman Ltd. is the owner and producer of the highly acclaimed and internationally recognized musical stage production CELTIC WOMAN and its related musical sound recordings and DVDs, featuring five Celtic female artists performing a mix of traditional Celtic, classical, theatrical and popular music.   David Kavanagh is the Chief Executive Officer and the largest shareholder of Celtic Woman Ltd.  Mr. Kavanagh also is the Chief Executive Officer and sole owner of Liffey Records Ltd. ("Liffey Records"), a record company based in Ireland.  Liffey Records is the parent company of Celtic Collections Ltd.

    2.       Upon information and belief, Defendant Celtic Thunder Ltd. is a corporation organized and existing under the laws of Ireland with an office and place of business at Scarton House, Convent Road, Kildare, Ireland.   Upon information and belief, Celtic Thunder Ltd. is the owner and producer of the musical stage production CELTIC MAN featuring five Celtic male artists performing a mix of traditional Celtic, classical, theatrical and popular music.

    3.       Upon information and belief, Defendant Celtic Man Ltd. is a corporation organized and existing under the laws of Ireland with an office and place of business at Scarton House, Convent Road, Kildare, Ireland.   Upon information and belief, Celtic Man Ltd. is the owner and producer of the CELTIC MAN show.

    4.       Upon information and belief, Defendant Sharon Browne ("Browne") is a citizen of Ireland with an address of 70 Coolnevaun, Stillorgan County Dublin, Ireland.   Upon information and belief, Browne is the owner of Celtic Thunder Ltd. and Celtic Man Ltd., and the producer of the CELTIC MAN show.  Browne is also a former employee of Celtic Collections Ltd., an affiliate of Plaintiff Celtic Woman Ltd. and the predecessor in interest to all rights, including the intellectual property rights, relating to CELTIC WOMAN, and to the name and

concept CELTIC MAN purchased from defendant Browne's former company and currently owned by Plaintiff Celtic Woman Ltd.

5.    Upon information and belief, Defendant WLIW LLC ("WLIW") is a Delaware corporation registered to transact business in the State of New York with a principal place of business at 450 W. 33rd Street, New York, NY, and is the owner and operator of WLIW21 New York Public Television, an independent public television station.   Upon information and belief, WLIW is scheduled to broadcast the CELTIC MAN stage show as part of its March 2008 pledge drive.

6.    Upon information and belief, Defendant Align Entertainment Group LLC ("Align") is a New York limited liability company with a principal place of business at 200 West 54th St., 11th Floor, New York, NY 10019.  Upon information and belief, Align has written, designed and issued press releases and promotional materials for the upcoming CELTIC MAN show.

7.    Upon information and belief, Defendant Gusatavo Sagastume ("Sagastume") is a United States citizen residing in Miami, Florida.  Upon information and belief, Sagastume is the United States promoter of the CELTIC MAN show.

8.    Celtic Thunder Ltd., Celtic Man Ltd., Browne, WLIW, Align, and Sagastume are sometimes collectively referred to herein as the "Defendants."

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121(a) as this action arises under the United States trademark laws, and under 28 U.S.C. § 1367 with respect to the pendant state law claims.

10.    This Court has personal jurisdiction over Defendants Celtic Thunder Ltd., Celtic Man Ltd., Browne and Sagastume because they have personally and through the acts of their agents, in the course of transacting business within the State of New York, committed tortious acts within this judicial district.

11.    This Court has personal jurisdiction over Defendants WLIW and Align because they are domiciled in the State of New York and they have personally and through the acts of their agents, in the course of transacting business within the State of New York, committed tortious acts within this judicial district.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

## NATURE OF THE CLAIM

13.    Plaintiff Celtic Woman Ltd. is the owner and producer of the highly acclaimed and internationally recognized musical stage production "CELTIC WOMAN," which features five Celtic female artists performing a mix of traditional Celtic, classical, theatrical and popular music in a large theatrical setting with an orchestra, choral singers, and highly professional and complex stage and lighting designs – a setting that distinguishes the CELTIC WOMAN production from the intimate venues of most all vocal performances of traditional Irish music.

14.    Since 2004, under the ownership and direction of Celtic Woman Ltd., CELTIC WOMAN has achieved widespread public acclaim and recognition with the release of music CDs and related DVDs that have sold several million copies in the United States alone, television specials broadcast thousands of times by hundreds of Public Broadcasting System ("PBS") stations throughout the United States, six tours in the United States with ticket sales

approximating 600,000 in number, sales of merchandise, and a highly popular Internet website. The trademark CELTIC WOMAN is recognized by millions of people and has achieved fame and secondary meaning in the United States.

15.     Defendants are intending to market a show entitled "CELTIC MAN," which features five Celtic male artists similarly performing Celtic music in a large theatrical setting with an orchestra, choral singers, and complex stage and lighting designs – *i.e.*, a virtual replica of the CELTIC WOMAN production in a male format that targets the same audience that has come to appreciate CELTIC WOMAN.  Upon information and belief, the CELTIC MAN production will make its debut televised performance on PBS station Defendant WLIW in March 2008 and, like CELTIC WOMAN, will be accompanied by a series of music CDs, DVDs, tours and merchandise distribution.

16.     Because of the enormous public recognition and acclaim that CELTIC WOMAN has garnered over the years through the substantial effort and financial investment of Plaintiff, use of such a closely related name – CELTIC MAN – a natural extension of CELTIC WOMAN, for a musical production in the same narrow genre of traditional Irish music, and which replicates the unusual format of, and targets the same audience and market as, CELTIC WOMAN, has caused actual confusion among many of the PBS stations that have previously broadcast the CELTIC WOMAN production, and therefore will certainly cause average consumers to be deceived into believing that CELTIC MAN is associated with the famous CELTIC WOMAN production, and that the two shows derive from the same source or sponsor or are otherwise commonly affiliated with or endorsed by the Plaintiff.  This confusion is fostered by Defendants' unauthorized and infringing use of the CELTIC WOMAN trademark to promote the CELTIC MAN show.  Unless these acts of infringement are enjoined, they will

continue to cause irreparable harm to the hard-earned and invaluable reputation and goodwill of CELTIC WOMAN. Such irreparable harm will occur in a devastating manner in March 2008 when PBS station, Defendant WLIW, is scheduled to broadcast the new CELTIC MAN show.

## STATEMENT OF FACTS

**I.**    **Plaintiff's Acquisition of CELTIC WOMAN and CELTIC MAN**

17.    In 2003, Celtic Collections Ltd., a record label then owned by Defendant Sharon Browne and one Declan Browne, designed CELTIC WOMAN as a means to promote some of its solo female recording artists. At the same time, Celtic Collections Ltd. conceived of the companion concept CELTIC MAN as a natural extension of CELTIC WOMAN, and reserved the commercial exploitation of the CELTIC MAN concept for the future after CELTIC WOMAN had successfully gained public acceptance and recognition.

18.    On July 27, 2004, Liffey Records, a company owned by David Kavanagh who also is the CEO and largest shareholder of Plaintiff Celtic Woman Ltd., purchased from the Brownes all the shares of Celtic Collections Ltd. in a Stock Purchase Agreement for 850,000 Euros (the 2004 equivalent of $1,036,237.11 United States dollars). This Stock Purchase included all of the assets and liabilities of Celtic Collections Ltd., including all intellectual property rights in the names and concepts CELTIC WOMAN and CELTIC MAN.

19.    In conjunction with Liffey Records' acquisition of Celtic Collections Ltd., Defendant Browne continued as an employee of the newly-acquired Celtic Collections Ltd.

20.    On September 15, 2004, following Liffey Records' acquisition of Celtic Collections Ltd., and under the auspices of Liffey Records, the first CELTIC WOMAN stage show was filmed for PBS television at The Helix Theater in Dublin, Ireland to a capacity audience.

21.     On January 4, 2005, Liffey Records and Celtic Collections Ltd. assigned all of the rights in the CELTIC WOMAN production to Plaintiff Celtic Woman Ltd., a company formed by David Kavanagh, the CEO of Liffey Records, in October, 2004, specifically for the purpose of developing, marketing, promoting and commercially exploiting CELTIC WOMAN. Thereafter, all rights to the name and concept of CELTIC MAN, and related artwork, was similarly assigned by Liffey Records and Celtic Collections Ltd. to Plaintiff.

## II.     Plaintiff's Development and Marketing of the CELTIC WOMAN Production

22.     On March 1, 2005, CELTIC WOMAN's debut album entitled *"Celtic Woman"* was released on CD and DVD through EMI Music's "Manhattan Records" label. *Celtic Woman* reached number one on Billboard's World Music Chart, eventually breaking a long standing record on July 22, 2006 by staying at number one for 68 weeks. *Celtic Woman* held the number one position on the World Music chart for a total of 81 weeks.

23.     Also in March 2005, the CELTIC WOMAN stage production recorded at The Helix Theater in September 2004 was broadcast on numerous PBS stations throughout the United States.

24.     In July 2006, Browne resigned as an employee of Plaintiff's affiliate, Celtic Collections Ltd., which resignation became effective on December 31, 2006. Notwithstanding the effective date of such termination, Defendant Browne provided no further services for Celtic Collections Ltd. after her tendered resignation in July 2006.

25.     On October 19, 2006, CELTIC WOMAN released a second album entitled *"Celtic Woman: A Christmas Celebration."* This album debuted at number one on the World Music Chart, bumping CELTIC WOMAN's first album to number two on the chart.

26.    Two months earlier, in August 2006, the TV special *"Celtic Woman: A New Journey: Live at Slane Castle"* was filmed at Slane Castle on the banks of the Boyne River.  This TV special premiered on PBS on December 6, 2006 with more than 90% of all 330 PBS stations broadcasting during PBS's December 2006 pledge period, and set fundraising records for the PBS stations.

27.    On January 30, 2007, CELTIC WOMAN released a third album entitled *"Celtic Woman: A New Journey"* that debuted at number one on the World Music Chart and number four on the Billboard Top 200 Music Chart.

28.    CELTIC WOMAN's CDs and DVDs have sold over 3 million copies in the United States.  CELTIC WOMAN's first CD, *Celtic Woman*, has gone platinum in the U.S. (selling over 1 million copies).  Its second and third CDs, *Celtic Woman: A Christmas Celebration* and *Celtic Woman: A New Journey*, have attained gold status in the U.S. (each selling over 500,000 copies).  CELTIC WOMAN'S DVDs have sold over 750,000 copies in the United States.

29.    To date, CELTIC WOMAN has completed six triumphant U.S. tours, selling out venues such as New York's Radio City Music Hall and Carnegie Hall, Boston's Opera House and Los Angeles' Greek Theatre.

30.    Approximately 600,000 tickets were purchased by the public for the CELTIC WOMAN United States tours.  The dates and ticket sales of each tour are as follows:

| Tour Name | Date | Approximate Tickets Sold |
|---|---|---|
| Celtic Woman | Summer 2005 | 49,000 |
| Celtic Woman | Fall 2005 | 66,000 |
| Celtic Woman | Spring 2006 | 105,000 |
| Celtic Woman | Summer 2006 | 33,000 |
| Celtic Woman: A New Journey | Spring 2007 | 279,000 |
| Celtic Woman: A New Journey | Fall 2007 | 66,000 |

31.     CELTIC WOMAN's March 2005 PBS special has aired over 3,400 times on 316 different PBS stations since its debut.

32.     CELTIC WOMAN has appeared on many television shows with nationwide audiences such as The Today Show, Live with Regis & Kelly, The Megan Mullaly Show, The Martha Stewart Show and Brian Boitano's NBC Skating Spectacular on New Year's Day 2007.

33.     On March 17, 2007, CELTIC WOMAN performed at the White House for President Bush and his guests at a St. Patrick's Day celebration.

34.     Celtic Woman Ltd.'s trademark CELTIC WOMAN is recognized by millions of people and has achieved fame and secondary meaning in the United States.

35.     Celtic Woman Ltd. has spent approximately $10 million to produce and promote the CELTIC WOMAN production and related CDs, DVDs, and merchandise.

**III.     Plaintiff's Registration of the CELTIC WOMAN Trademark**

36.     Plaintiff owns the following United States trademark registrations issued on the Principal Register:

| **Mark** | **Reg. No.** | **Reg. Date** | **Goods** |
|---|---|---|---|
| CELTIC WOMAN | 3,290,299 | 9/11/2007 | Series of musical sound recordings and prerecorded compact discs, videotapes, CD-ROMs, DVSs, all featuring music and/or dance; downloadable audio and video recordings featuring music and/or dance. |
| CELTIC WOMAN | 3,290,300 | 9/11/2007 | Printed matter, paper and stationery products, namely, posters, poster books, calendars, concert souvenir programs, stickers, bumper stickers, decals, postcards, picture postcards, stationery, photographs, printed paper signs, and tickets. |

| CELTIC WOMAN | 3,306,488 | 10/9/2007 | Clothing, namely, shirts, polo shirts, T-shirts, athletic uniforms, tops, sweat pants, jackets, caps, hats, aprons, scarves, singlets, socks, loungewear. |
|---|---|---|---|

37.    In accordance with Sections 7(b), 22 and 33(a) of the Lanham Trademark Act, Plaintiff's above-cited registrations constitute prima facie evidence of the validity of such registered marks and of the registrations thereof, Plaintiff's ownership of the marks shown in said registrations, and Plaintiff's exclusive right to use the marks in commerce in connection with the goods and services named therein, without condition or limitation.

38.    Through its efforts over the past several years, Celtic Woman Ltd. has established a strong consumer base and is known throughout its market as a provider of high quality entertainment goods and services.  By virtue of the quality of its products and services, and as a result of its expenditure of considerable sums of money on advertising and promotion, Celtic Woman Ltd. has built up valuable goodwill in its mark CELTIC WOMAN.  Such mark is of immeasurable value to Plaintiff.

**IV.    Plaintiff's Use of CELTIC WOMAN on the Internet**

39.    CELTIC WOMAN has an active presence on the Internet.  Celtic Woman Ltd. acquired the <celticwoman.com> domain name and has operated a website at this Internet address since at least as early as March, 2005.  The CELTIC WOMAN name and mark is prominently featured on Celtic Woman Ltd.'s website and has been so featured since it went live.

40.    The CELTIC WOMAN branded website receives an average of 35,000 to 42,000 hits per week, and had 215,920 visitors and 1,427,950 "pageviews" in December 2007.

41.     Celtic Woman Ltd. uses its CELTIC WOMAN website to advertise and promote its CELTIC WOMAN CDs and DVDs, as well as to provide information to consumers and fans about upcoming appearances, concerts and tours.  This website also provides information about the CELTIC WOMAN performers and permits consumers to purchase CELTIC WOMAN branded merchandise such as concert programs, t-shirts, coffee mugs, key chains, posters, paperweights, bookmarks, and other related merchandise.

42.     To date, Celtic Woman Ltd. has sold over 4,500 items of CELTIC WOMAN branded merchandise to consumers in the United States through its <celticwoman.com> website alone.  These sales do not include sales of CELTIC WOMAN branded merchandise during CELTIC WOMAN tours or other channels of trade.

## V.    Plaintiff's Steps to Develop CELTIC MAN

43.     In 2005, Plaintiff Celtic Woman Ltd. began to consider the future development and commercial exploitation of the CELTIC MAN concept.  To that end, David Kavanagh, CEO of Celtic Woman Ltd., had several discussions with Defendant Browne, then an employee of Celtic Collections Ltd., regarding the pursuit of the CELTIC MAN concept.  Additionally, Mr. Kavanagh met with members of EMI Music to discuss the development of CELTIC MAN. Defendant Browne was present at this meeting in her capacity as an employee of Celtic Collections Ltd.

44.     Thereafter, on May 26, 2006 and November 2, 2006, respectively, Celtic Woman Ltd. obtained registrations for the domain names <celticman.eu> and <celticman.com> in contemplation of producing a stage show by this name in the future after CELTIC WOMAN had been firmly established.

#715264                                    11

45.    On May 3, 2007, Celtic Woman Ltd. filed four United States trademark applications for the mark CELTIC MAN with the United States Patent and Trademark Office, which applications are pending.

## VI.    Defendants' Infringing Use of CELTIC WOMAN and CELTIC MAN

46.    Browne and her collaborators have replicated the CELTIC WOMAN production under the name CELTIC MAN. Just like the CELTIC WOMAN production, Browne's CELTIC MAN show features five Celtic male artists performing Celtic music in a large theatrical setting with an orchestra, choral singers, and complex stage and lighting designs.

47.    Defendants' CELTIC MAN show not only replicates the CELTIC WOMAN stage production, but also uses the CELTIC MAN name and concept that Plaintiff's affiliate, Liffey Records, acquired from Defendant Browne when it purchased Celtic Collections Ltd. In addition to using the confusingly similar and virtually identical trademark CELTIC MAN for the show, Defendants are using the Plaintiff's trademark CELTIC WOMAN prominently in promotional materials for CELTIC MAN.

48.    In connection with this project, Defendant Celtic Man Ltd. acquired the domain names <celticman.ie> and <celticman.net> and created a website to promote the CELTIC MAN project. Defendant Celtic Man Ltd. owns the domain names <celticmen.net>, <celticmen.eu> and <celticmen.ie> all of which re-direct to the website that promotes the CELTIC MAN production as well as the domain name <celticman.mobi>.

49.    Plaintiff's CELTIC WOMAN stage production has aired on PBS during its annual pledge drive every year since 2005. Plaintiff provides the participating PBS stations in cities where CELTIC WOMAN is touring with free tickets to such performances. These PBS stations

auction off such tickets or provide them to donors as premiums as part of the stations' pledge drives.

50.    On October 3-5, 2007, a PBS Development Conference was held in Palm Desert, California (the "Conference"). This Conference was attended by approximately 800-900 people, comprised of representatives and television programmers from approximately 300 different PBS stations in the United States and people seeking to sell goods and services to PBS stations.

51.    At the Conference, Defendants distributed a promotional DVD entitled "CELTIC MAN in Celtic Thunder The Show" (the "CELTIC MAN Promo Video") and other promotional materials, which advertise an audiovisual performance of CELTIC MAN scheduled to be aired by WLIW in March 2008.

52.    The CELTIC MAN Promo Video makes prominent use of the trademark CELTIC WOMAN in addition to the trademark CELTIC MAN, including a single frame opening screen credit that recites the following:

Frame 1:                    CELTIC MAN

                     IN CELTIC THUNDER THE SHOW
Frame 2:             BROUGHT TO YOU BY WLIW AND PEP

Frame 3:        AND SHARON BROWNE, ORIGINAL CREATOR
                     AND PRODUCER OF CELTIC WOMAN

53.    The CELTIC MAN Promo Video and other CELTIC MAN promotional materials distributed at the Conference caused the widespread mistaken belief among the PBS delegate stations in attendance that the CELTIC MAN show was Celtic Woman Ltd.'s new project.

54.    During the Conference, approximately 50 different PBS delegates approached the CELTIC WOMAN booth and made statements to CELTIC WOMAN representatives such as:

- Do you have any more information on CELTIC MAN?

- We saw the materials for your new show.

- Don't you think the concepts are too close to one another to work?

- Is there going to be a tour with tickets?

- Is it the same kind of music?

- Can we expect the same deal?

- Congratulations on your new show.

55.     These PBS delegates mistakenly assumed that CELTIC MAN was associated with, sponsored by, or affiliated with CELTIC WOMAN and Celtic Woman Ltd.

56.     Upon information and belief, Defendants are actively soliciting PBS stations to air the CELTIC MAN stage show as part of the annual PBS pledge drive in the same manner as the PBS stations have presented Plaintiff's CELTIC WOMAN production.  At least one PBS station, Defendant WLIW, is scheduled to air the CELTIC MAN stage show during its March 2008 pledge drive.

57.     Upon information and belief, a representative of Celtic Man Ltd. has gone so far as to suggest to at least one PBS station that it should broadcast the CELTIC MAN performance immediately following the CELTIC WOMAN performance during the annual pledge drive because the same target audience will already be tuned in.

58.     On November 2, 2007, Plaintiff Celtic Woman Ltd. notified Defendant Browne that it would "aggressively act to protect our interests in the event that your project infringes on the Celtic Woman trademarks, or if there is any suggestion that Celtic Woman is promoting, presenting, supporting or otherwise connected to your show."

59.     In response, on November 4, 2007, Browne assured Plaintiff that "there will be no association with Celtic Woman and my new show."

60.   On December 11, 2007, notwithstanding Browne's prior assurances, Defendants issued a major press release announcing the CELTIC MAN performing group and stage show entitled "Creator of the Best Selling Irish Musical Phenomenon 'Celtic Woman' Launches Brand New Show CELTIC MAN: CELTIC THUNDER THE SHOW."

61.   Defendant Browne's "My Space" profile on MySpace.com prominently references CELTIC WOMAN and contains unauthorized CELTIC WOMAN songs that visitors to Browne's MySpace page can listen to.

62.   Defendants are using the CELTIC MAN and CELTIC WOMAN trademarks with actual knowledge of Plaintiff's prior rights in and to such names and marks.

63.   Defendants' use of CELTIC MAN has caused enormous actual confusion among the PBS representatives at the Conference, and during the subsequent CELTIC WOMAN tour late this fall and afterwards.  Confusion among such experienced knowledgeable people in the trade makes it a virtual certainty that the general public who upon viewing the scheduled CELTIC MAN PBS Special in March 2008 will be similarly misled to believe that the CELTIC MAN production is related to, sponsored by or affiliated with CELTIC WOMAN and Celtic Woman Ltd.

**VII.   Ireland Registration Office's Rejection of Defendant Browne's
Attempt to Register "Celtic Man Ltd."**

64.   In or around March 2007, just three months following the expiration of Browne's employment with Celtic Collections Ltd., Plaintiff received a letter from the Company Register Office ("CRO") in Dublin, Ireland informing it that the CRO had issued the company name "Celtic Man Ltd."  Upon information and belief, Browne is the Director of Celtic Man Ltd.

65.   On April 4, 2007, Celtic Woman Ltd. objected to the formation of the company Celtic Man Ltd. on the grounds that such name is confusingly similar to Celtic Woman Ltd. and

would cause confusion among the general public and suppliers. The letter also informed the

CRO that Celtic Woman Ltd. owns the domain name <celticman.com> which is identical to the

company name, and that the Director of Celtic Man Ltd., Browne, was formerly an employee of

Plaintiff's related company Celtic Collections Ltd.

66.    Following this objection, on June 22, 2007, Browne registered the company name

"Celtic Thunder Ltd."

67.    On or around November 20, 2007, the Registrar of Companies in Ireland denied

Browne's application to use "Celtic Man Limited" as a company name, and found that the name

Celtic Man Limited would have to be changed so as not to infringe on the rights of Celtic

Woman Limited.

## VIII.  United States Trademark Office's Objection to Defendant Celtic Man Ltd.'s Trademark Application for "CELTIC MAN"

68.    On April 16, 2007, Defendant Celtic Man Ltd. applied to register CELTIC MAN

as a trademark in the United States.

69.    On July 31, 2007, the United States Patent and Trademark Office issued an Office

Action denying Celtic Man Ltd.'s application to register "CELTIC MAN" as a trademark on the

grounds that such mark is confusingly similar to Celtic Woman Ltd.'s registered trademark

CELTIC WOMAN for virtually identical entertainment activities and related merchandise.

## IX.    Effect of Defendants' Unlawful Use of Plaintiff's Trademarks

70.    Consumers, including PBS station representatives, booking agents, theaters,

arenas and the press, in addition to the general public, are likely to be deceived into believing

that Defendants' CELTIC MAN stage show and sound recordings and audiovisual recordings of

the CELTIC MAN show and associated merchandise either originates with Plaintiff as the

source, or is otherwise sponsored or endorsed by Plaintiff.

71.    The likelihood of consumer confusion is made even more certain by the heretofore described opening screen credit of the CELTIC MAN Promo Video in the marketing and promotional materials and press releases relating to the CELTIC MAN debut on PBS, on the CELTIC MAN website, and on Browne's "My Space" web page.

72.    Defendants' CELTIC MAN stage show and Defendants' proposed distribution of CDs and DVDs and merchandise associated with the CELTIC MAN stage show and live tour will be sold to the same market of consumers that is the target population of Plaintiff's CELTIC WOMAN stage show and sound recordings and audio visual recordings featuring CELTIC WOMAN and offered through the same channels of trade.

73.    Plaintiff Celtic Woman Ltd. has no control over the quality of the Defendants' CELTIC MAN stage show.  As a consequence, the favorable reputation and goodwill that Celtic Woman Ltd. has developed in its valuable CELTIC WOMAN trademark is in jeopardy as a result of Defendants' use and threatened use of CELTIC MAN.

74.    Defendants' use of CELTIC MAN has resulted in actual confusion and will certainly continue to result in widespread consumer confusion as to the source, affiliation, connection or association of CELTIC MAN with CELTIC WOMAN.

75.    Plaintiff has suffered and will continue to suffer irreparable harm to its invaluable trademark CELTIC WOMAN as a result of Defendants' use of CELTIC MAN in connection with its musical replication of the CELTIC WOMAN project in its masculine counterpart CELTIC MAN.

## COUNT I
### (Trademark Infringement Of A Federal
### Trademark Pursuant to 15 U.S.C. § 1114(1))
### Defendants' Use of CELTIC MAN

76.    Plaintiff restates and incorporates by reference the allegations continued in paragraphs 1 through 75 as if fully stated herein.

77.    This claim is for infringement of a federally registered trademark under 15 U.S.C. §1114(1).

78.    Plaintiff holds a valid federal trademark registration for the mark CELTIC WOMAN on the Principal Register for a series of musical sound recordings and prerecorded compact discs, videotapes, CD-ROMs, DVDs, all featuring music and/or dance; downloadable audio and video recordings featuring music and/or dance.

79.    Plaintiff holds two valid federal trademark registrations for the mark CELTIC WOMAN on the Principal Register for various types of merchandise such as clothing, tour programs and posters, sold in connection with the CELTIC WOMAN musical stage show.

80.    Defendants' CELTIC MAN mark is virtually identical in appearance and sound, and creates the same commercial impression as Plaintiff's CELTIC WOMAN mark.

81.    Defendants use the CELTIC MAN mark in interstate commerce in connection with a musical stage show, sound recordings and audio visual recordings featuring live musical performances of five male Celtic artists - - the identical goods and services to which Plaintiff's CELTIC WOMAN mark applies

82.    Plaintiff has priority over Defendants by virtue of its use of the mark CELTIC WOMAN prior to Defendants' date of first use of the CELTIC MAN mark.

83.    Defendants' CELTIC MAN mark and Plaintiff's CELTIC WOMAN mark are used on or in connection with the same or similar goods and services.

84.    Consumers are likely to see Defendants' CELTIC MAN mark and mistakenly believe that Defendants' musical stage show, CD and DVD featuring live musical performances of five male Celtic artists originate with, or are related to, affiliated with, or sponsored by Plaintiff.

85.    Plaintiff has no control over the quality of the goods that Defendants sell and the services that Defendants provide under the CELTIC MAN mark.  As a consequence, the favorable goodwill that Plaintiff has developed in its valuable CELTIC WOMAN trademark is at risk as a result of Defendants' use of the CELTIC MAN mark.

86.    Defendants advertise their goods and services to the same consumers and sell their goods and services through the same channels of trade as Plaintiff.

87.    Defendants' use of the CELTIC MAN mark has caused and is likely to continue to cause confusion, or to cause mistake or to deceive the relevant consumer public as to the source, affiliation, connection or association of Defendants and/or their musical stage show, CD and DVD featuring live musical performances of five male Celtic artists with Plaintiff's CELTIC WOMAN production, products and services.

88.    Plaintiff has suffered and will continue to suffer irreparable harm, as a result of Defendants' use of the CELTIC MAN mark for a musical stage show, CD and DVD featuring live musical performances of five male Celtic artists.

## COUNT II
### (Trademark Infringement Of A Federal Trademark Pursuant to 15 U.S.C. § 1114(1))
### Defendants' Use of CELTIC WOMAN

89.    Plaintiff restates and incorporates by reference the allegations continued in paragraphs 1 through 88 as if fully stated herein.

90.    This claim is for infringement of a federally registered trademark under 15 U.S.C. §1114(1).

91.    Plaintiff holds a valid federal trademark registration for the mark CELTIC WOMAN on the Principal Register for a series of musical sound recordings and prerecorded compact discs, videotapes, CD-ROMs, DVSs, all featuring music and/or dance; downloadable audio and video recordings featuring music and/or dance.

92.    Plaintiff holds two valid federal trademark registrations for the mark CELTIC WOMAN on the Principal Register for various types of merchandise such as clothing, tour programs and posters, sold in connection with the CELTIC WOMAN musical stage show.

93.    Defendants are using the identical mark CELTIC WOMAN in connection with the promotion of Defendants' CELTIC MAN musical stage show, sound recordings and audio visual recordings featuring live musical performances of five male Celtic artists.

94.    Plaintiff has priority over Defendants by virtue of its use of the mark CELTIC WOMAN prior to Defendants' date of first use of the CELTIC WOMAN mark.

95.    Defendants are using the CELTIC WOMAN mark to promote the same or similar goods and services offered by Plaintiff in connection with its CELTIC WOMAN trademark.

96.    Consumers are likely to see Defendants' use of the CELTIC WOMAN mark in connection with Defendants' musical stage show, sound recordings and audio visual recordings and mistakenly believe that Defendants' musical stage show, CD and DVD featuring live musical performances of five male Celtic artists is related to, affiliated with, or sponsored by Plaintiff.

97.    Plaintiff has no control over the quality of the goods that Defendants sell and the services that Defendants provide under the CELTIC MAN mark.  As a consequence, the

favorable goodwill that Plaintiff has developed in its valuable CELTIC WOMAN trademark is at risk as a result of Defendants' use of the CELTIC WOMAN mark to promote Defendants' CELTIC MAN stage show.

98.    Defendants advertise their goods and services to the same consumers and sell their goods and services through the same channels of trade as Plaintiff.

99.    Defendants' use of the CELTIC WOMAN mark has caused actual confusion and is likely to continue to cause confusion, or to cause mistake or to deceive the relevant consuming public as to the source, affiliation, connection or association of Defendants and/or their musical stage show, CD and DVD featuring live musical performances of five male Celtic artists with Plaintiff.

100.    Plaintiff has suffered and will continue to suffer irreparable harm, as a result of Defendants' use of the CELTIC WOMAN mark for a musical stage show, CD and DVD featuring live musical performances of five male Celtic artists.

### COUNT III
### (False Designation of Origin
### Pursuant to 15 U.S.C. § 1125(a))
### Defendants' Use of CELTIC MAN

101.    Plaintiff restates and incorporates by reference the allegations continued in paragraphs 1 through 100 as if fully stated herein.

102.    This claim is for false designation of origin under 15 U.S.C. § 1125(a).

103.    Plaintiff is the owner and producer of the highly acclaimed and internationally recognized musical stage production CELTIC WOMAN, featuring five Celtic female artists performing a mix of traditional Celtic, classical, theatrical and popular music.

104.    Plaintiff's CELTIC WOMAN mark has been extensively advertised and promoted in connection with Plaintiff's musical stage production CELTIC WOMAN and sound recordings

and audio visual recordings featuring five Celtic female artists performing a mix of traditional Celtic, classical, theatrical and popular music and has acquired secondary meaning.

105.    The trademark CELTIC WOMAN has been used by Plaintiff and not abandoned since a date prior to any date on which Defendants may rely.

106.    Defendants are using CELTIC MAN, which is identical or confusingly similar to Plaintiff's CELTIC WOMAN mark in appearance, sound and in commercial impression.

107.    The goods and services of Defendants offered in connection with CELTIC MAN are identical or related to Plaintiff's goods and services offered under the CELTIC WOMAN mark.

108.    Plaintiff has no control over the quality of the goods that Defendants sell and the services Defendants provide in connection with CELTIC MAN.  As a consequence, the favorable goodwill that Plaintiff has developed in its valuable CELTIC WOMAN mark is at risk as a result of Defendants' use of CELTIC MAN.

109.    Upon information and belief, Defendants advertise their goods and services to the same consumers and sell their goods and services through the same channels of trade as Plaintiff.

110.    Defendants' use of CELTIC MAN has caused actual confusion and is likely to continue to cause confusion, or to cause mistake or to deceive the relevant consuming public as to the source, affiliation, connection or association of Defendants with Plaintiff.

111.    Plaintiff has suffered and will continue to suffer irreparable harm, as a result of Defendants' use of CELTIC MAN in connection with a musical stage show, CD and DVD featuring live musical performances of five male Celtic artists.

## COUNT IV
### (False Designation of Origin
### Pursuant to 15 U.S.C. § 1125(a)
### Defendants' Use of CELTIC WOMAN

112.    Plaintiff restates and incorporates by reference the allegations continued in paragraphs 1 through 111 as if fully stated herein.

113.    This claim is for false designation of origin under 15 U.S.C. § 1125(a).

114.    Plaintiff is the owner and producer of the highly acclaimed and internationally recognized musical stage production CELTIC WOMAN, featuring five Celtic female artists performing a mix of traditional Celtic, classical, theatrical and popular music.

115.    Plaintiff's CELTIC WOMAN mark has been extensively advertised and promoted in connection with Plaintiff's musical stage production CELTIC WOMAN and sound recordings and audio visual recordings featuring five Celtic female artists performing a mix of traditional Celtic, classical, theatrical and popular music and has acquired secondary meaning.

116.    The trademark CELTIC WOMAN has been used by Plaintiff and not abandoned since a date prior to any date on which Defendants may rely.

117.    Defendants have used CELTIC WOMAN in connection with the advertising of Defendants' CELTIC MAN stage show.

118.    The goods and services of Defendants are promoting in connection with CELTIC WOMAN are identical or related to Plaintiff's goods and services offered under the CELTIC WOMAN mark.

119.    Plaintiff has no control over the quality of the goods that Defendants sell and the services Defendants provide in connection with CELTIC WOMAN.  As a consequence, the favorable goodwill that Plaintiff has developed in its valuable CELTIC WOMAN mark is at risk as a result of Defendants' use of CELTIC WOMAN.

120.    Upon information and belief, Defendants advertise their goods and services to the same consumers and sell their goods and services through the same channels of trade as Plaintiff.

121.    Defendants' use of CELTIC WOMAN is likely to cause confusion, or to cause mistake or to deceive the relevant consuming public as to the source, affiliation, connection or association of Defendants with Plaintiff.

122.    Plaintiff has suffered and will continue to suffer irreparable harm, as a result of Defendants' use of CELTIC WOMAN in connection with a musical stage show, CD and DVD featuring live musical performances of five male Celtic artists.

## COUNT V
### (State Trademark Infringement and Unfair Competition)
### Defendants' Use of CELTIC MAN

123.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 122 above as if fully stated herein.

124.    This claim is for trademark infringement and unfair competition under New York common law.

125.    Plaintiff uses the trademark CELTIC WOMAN in connection with a musical stage production, sound recordings, audio visual recordings featuring five female Celtic artists and related merchandise.  Such mark has acquired secondary meaning.

126.    Upon information and belief, the trademark CELTIC WOMAN has been used by Plaintiff and not abandoned since a date prior to any date on which Defendants may rely.

127.    Defendants' CELTIC MAN trademark is confusingly similar to Plaintiff's CELTIC WOMAN trademark in appearance, sound and in commercial impression.

128.    The goods and services of Defendants offer under the CELTIC MAN trademark are closely related to Plaintiff's goods and services offered under the CELTIC WOMAN trademark.

129.    Plaintiff has no control over the quality of the goods and services that Defendants sell under the CELTIC MAN trademark. As a consequence, the favorable goodwill that Plaintiff has developed in its valuable CELTIC WOMAN trademark is at risk as a result of Defendants' use of CELTIC MAN.

130.    Upon information and belief, Defendants advertise their goods and services to the same consumers and sells their goods through the same channels of trade as Plaintiff.

131.    Defendants' use of the CELTIC MAN trademark is likely to cause confusion, or to cause mistake or to deceive the relevant consuming public as to the source, affiliation, connection or association of Defendants with Plaintiff.

132.    Plaintiff has suffered and will continue to suffer irreparable harm, as a result of Defendants' use of the CELTIC MAN trademark.

## COUNT VI
### (Federal Trademark Dilution Pursuant to Trademark Dilution Revision Act of 2006 15 U.S.C. § 1125(c))
### Dilution by Tarnishment

133.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 132 above as if fully stated herein.

134.    This claim is for trademark dilution under 15 U.S.C. § 1125(c).

135.    As a result of, among other things, Plaintiff's continuous and substantial use, and extensive advertising, promotion and publicity of Plaintiff's CELTIC WOMAN name and mark,

such mark and name has become distinctive and famous, long prior to the unlawful acts of Defendants complained of herein.

136.    Defendants' unauthorized use of the name and mark CELTIC MAN in connection with a musical stage production featuring five Celtic male artists performing a mix of traditional Celtic, classical, theatrical and popular music has tarnished and harmed the reputation of the distinctive quality of the CELTIC WOMAN mark, and will continue to tarnish and harm the reputation of the distinctive quality of Plaintiff's CELTIC WOMAN mark, and was willfully intended to tarnish and dilute the distinctive quality of Plaintiff's CELTIC WOMAN mark and injure Plaintiff's goodwill and business reputation in violation of 15 U.S.C. § 1125(c), all to Plaintiff's irreparable harm.

137.    Defendants' acts of trademark dilution as set forth above, have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable injury and damage to Plaintiff.

138.    Upon information and belief, Defendants will continue such acts unless enjoined by this Court.

### COUNT VII
**(Federal Trademark Dilution Pursuant to
Trademark Dilution Revision Act of 2006
15 U.S.C. § 1125(c))
Dilution by Blurring**

139.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 138 above as if fully stated herein.

140.    This claim is for trademark dilution under 15 U.S.C. § 1125(c).

141.    As a result of among other things, Plaintiff's continuous and substantial use, and extensive advertising, promotion and publicity of Plaintiff's CELTIC WOMAN name and mark,

such mark and name has become distinctive and famous, long prior to the unlawful acts of Defendants complained of herein.

142.    Defendants' unauthorized use of the name and mark CELTIC MAN in connection with a musical stage production featuring five Celtic male artists performing a mix of traditional Celtic, classical, theatrical and popular music has blurred the distinctive quality of the CELTIC WOMAN mark, and will continue to blur and impair the distinctive quality of Plaintiff's CELTIC WOMAN mark, and was willfully intended to blur and impair the distinctive quality of Plaintiff's CELTIC WOMAN mark and injure Plaintiff's goodwill and business reputation in violation of 15 U.S.C. § 1125(c), all to Plaintiff's irreparable harm.

143.    Defendants' acts of trademark dilution as set forth above, have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable injury and damage to Plaintiff.

144.    Upon information and belief, Defendants will continue such acts unless enjoined by this Court.

## COUNT VIII
### (State Trademark Dilution
### Pursuant to N.Y. General Business Law § 360-l)

145.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 144 above as if fully stated herein.

146.    This claim is for trademark and trade name dilution and injury to business reputation under New York General Business Law § 360-l.

147.    As a result of among other things, Plaintiff's continuous and substantial use, and extensive advertising, promotion and publicity of Plaintiff's CELTIC WOMAN name and mark,

such mark and name has become distinctive and famous, long prior to the unlawful acts of Defendants complained of herein.

148.    Defendants' unauthorized use of the name and mark CELTIC MAN in connection with a musical stage production featuring five Celtic male artists performing a mix of traditional Celtic, classical, theatrical and popular music has blurred the distinctive quality of the CELTIC WOMAN mark and has tarnished the reputation of the CELTIC WOMAN mark, and will continue to blur, tarnish and impair the distinctive quality of Plaintiff's CELTIC WOMAN mark and injure Plaintiff's goodwill and business reputation.

149.    Defendants' acts of trademark dilution as set forth above, have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable injury and damage to Plaintiff.

150.    Upon information and belief, Defendants will continue such acts unless enjoined by this Court.

### COUNT IX
### (Federal Domain Name Cybersquatting
### Pursuant to 15 U.S.C. § 1125(d)) Against Defendant Celtic Man Ltd.)

151.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 150 above as if fully stated herein.

152.    This claim is for trademark cyberpiracy under 15 U.S.C. § 1125(d).

153.    Plaintiff's CELTIC WOMAN mark is a distinctive and famous mark entitled to trademark protection.

154.    The domain names <celticman.ie>, <celticman.net>, <celticman.mobi>, <celticmen.ie>, <celticmen.eu>, <celticmen.net> registered by Defendant Celtic Man Ltd. or by

its authorized agent or licensee are identical or confusingly similar to Plaintiff's CELTIC

WOMAN mark.

155.    Plaintiff has never authorized, licensed, or otherwise permitted Defendant Celtic

Man Ltd. or its authorized agent or licensee to use the CELTIC WOMAN mark or any

confusingly similar variations thereof as an Internet domain name or in any other manner.

156.    Upon information and belief, the unlawful acts complained of herein were

committed by Defendant Celtic Man Ltd. or its authorized agent or licensee with a bad faith

intent to profit from Plaintiff's mark.

157.    As a result of Defendant Celtic Man Ltd. or its authorized agent or licensee's

unlawful acts, Plaintiff has suffered, and continues to suffer, substantial damage and irreparable

injury, which damage and injury cannot be accurately computed at this time.

158.    Defendant Celtic Man Ltd. or its authorized agent or licensee's aforesaid acts

constitute domain name cybersquatting in violation of 15 U.S.C. § 1125(d).

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following:

1.    That Defendants, their respective agents, servants, employees, officers, directors,

successors and assigns, and all those in active concert or participation with them, be

preliminarily and permanently enjoined from:

(a)    using in any form or manner the name or mark CELTIC MAN;

(b)    using in any form or manner the domain names <celticman.ie>,

<celticman.net>, <celticman.mobi>, <celticmen.ie>, <celticmen.eu>, and <celticmen.net>;

(c)    using in any form or manner CELTIC MAN, or

any other name, trade name, trademark, metatag, service mark, or domain name or consisting, in

whole or in part, of the term CELTIC MAN, or any confusingly similar name, trade name,

trademark, or domain name, on or in connection with any musical performance, group or stage show or filing or recording thereof;

        (d)    using in any form or manner CELTIC WOMAN, or any other name, trade name, trademark, metatag, service mark, or domain name or consisting, in whole or in part, of the term CELTIC WOMAN, or any confusingly similar name, trade name, trademark, or domain name, on or in connection with any musical performance, group or stage show or filming or recording thereof;

        (f)    expressly or impliedly representing itself or its goods or services as being affiliated in any manner with Plaintiff or as authorized, sponsored, or endorsed by or otherwise connected with Plaintiff;

        (g)    engaging in any conduct which will cause or is likely to cause confusion, mistake or misunderstanding as to the source, affiliation, connection, or association of Defendants or their products or services with Plaintiff or its products or services;

        (h)    otherwise infringing upon the trademark rights of Plaintiff or unfairly compete with Plaintiff in any manner whatsoever.

    2.    That the Court enter an order requiring Defendant to immediately disable and transfer to Plaintiff the domain names <celticman.ie>, <celticman.net>, <celticman.mobi>, <celticmen.ie>, <celticmen.eu>, and <celticmen.net>.

    3.    That the Court enter an order requiring Defendants to engage in corrective advertising to dispel any confusion that may have been created by Defendants use of the trademarks CELTIC WOMAN and CELTIC MAN.

4.    That the Court find that Defendants' acts complained of herein were done willfully and with knowledge of Plaintiff's rights and award Plaintiff compensatory damages, treble damages, costs, and attorneys' fees.

5.    That the Court award Plaintiff statutory damages of $100,000 pursuant to 15 U.S.C. § 1117(d).

6.    That the Court award Plaintiff such other relief as this Court deems proper.

Dated: New York, New York
       January 3, 2008

Respectfully submitted,

CELTIC WOMAN LTD.

By its attorneys,

Peter A. Herbert (PH-2581)
Deborah Benson
Eric D. Levin
Amy B. Spagnole
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
Tel: (617) 345-9000
Fax: (617) 345-9020

Richard S. Mandel (RM-4884)
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036
Tel:  (212) 790-9200
Fax:  (212) 575-0671