UNITED STATES DISTRICT COURT        FILED ELECTRONICALLY
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

|  |  |  |
|---|---|---|
| CELTIC WOMAN LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 08-CV-0066 (TPG) |
| - against - | ) | |
| | ) | |
| CELTIC THUNDER LTD., | ) | |
| CELTIC MAN LTD., SHARON | ) | |
| BROWNE, WLIW LLC, | ) | |
| ALIGN ENTERTAINMENT LLC | ) | |
| and GUSTAVO SAGASTUME | ) | |
| | ) | |
| Defendant. | ) | |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x


# MEMORANDUM OF DEFENDANTS SHARON BROWNE, CELTIC MAN LTD. AND CELTIC THUNDER LTD. IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION


Jeremy Feigelson (JF-4963)
Susan A. McMahon (SM-4709)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants Sharon Browne,
Celtic Man Ltd. and Celtic Thunder Ltd.*

# TABLE OF CONTENTS

**Page**

Preliminary Statement...................................................................................................1

Statement of Facts........................................................................................................5

Argument .....................................................................................................................7

    I.    Defendants' Voluntary Revision Of Their Business Plans Makes The
Motion Moot.........................................................................................................7

    II.   Plaintiff's Nearly Year-Long Delay In Seeking Relief Confirms The Lack
Of Irreparable Harm.............................................................................................8

    III.  Plaintiff Is Not Likely To Succeed On The Merits..............................................10

    IV.  The Balance Of Hardships Weighs Strong In Favor Of Defendants.....................13

    V.   Plaintiff's Unclean Hands Support The Denial Of Preliminary Relief.................14

Conclusion .................................................................................................................18

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Brother Records v. Jardine, 318 F.3d 900 (9th Cir. 2003)...........................................11, 12

Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc., 270
    F. Supp. 2d 432 (S.D.N.Y. 2003) .................................................................................8, 9

Citibank, N.A. v. Citytrust, 756 F.2d 273 (2d Cir. 1985) .................................................8, 9

Consumers Union of United States v. gen. Signal Corp, 724 F.2d 1044 (2d Cir.
    1983)................................................................................................................................7

Federal Exp. Corp. v. Federal Espresso, Inc., 201 F.3d 168 (2d Cir. 2000).................7, 14

Fed. Folding Wall Corp. v. National Folding Wall Corp., 340 F. Supp. 141
    (S.D.N.Y. 1971) ............................................................................................................16

Gidatex, S.r.L. v. Campaniello Imports, Ltd., 13 F. Supp. 2d 417 (S.D.N.Y. 1998) ..........9

Granite State Outdoor Adver., Inc. v. Town of Orange, Connecticut, 303 F.3d 450
    (2d Cir. 2002) .................................................................................................................7

Gruner & Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993) ...................16

Kassbaum v. Steppenwolf, 236 F.3d 487 (9th Cir. 2000)..................................................12

Maurag, Inc. v. Bertuglia, 494 F. Supp. 2d 395 (E.D. Va. 2007)......................................12

Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402
    (S.D.N.Y. 2006) .......................................................................................................10, 11

New Kids on the Block v. News America Pbl'g, Inc., 971 F.2d 302 (9th Cir.1992)...10, 11

Organizational Techs., Inc. v. Dun & Bradstreet Corp. Found., 44 U.S.P.Q. 2d
    1533 (S.D.N.Y. 1997) .....................................................................................................8

Playboy Enter., Inc. v. Welles, 279 F.3d 796 (9th Cir. 2002) ...........................................11

Urecal Corp. v. Masters, 413 F. Supp. 873, 195 U.S.P.Q. 93 (N.D. Ill. 1976)..................16

Worthington v. Anderson, 386 F.3d 1314, 72 U.S.P.Q. 2d 1808 (10th Cir. 2004) ...........16

Defendants Celtic Man Ltd., Celtic Thunder Ltd. and Sharon Browne (together the "Celtic Thunder Parties" or "Defendants") hereby oppose the motion for preliminary injunction of plaintiff Celtic Woman Ltd. ("Plaintiff").

## Preliminary Statement

Through this trademark dispute, Plaintiff seeks to interfere with the impending United States rollout of CELTIC THUNDER, Defendants' original musical show featuring male singers from Ireland and Scotland. CELTIC THUNDER is set to debut on New York-area public television on March 5, 2008. An associated CD and DVD have been set for release around the same time, with a live U.S. tour scheduled for this fall. CELTIC THUNDER was created by Defendant Sharon Browne, a major figure in the field of Irish popular music. Ms. Browne previously created and produced a hit show called CELTIC WOMAN that featured female singers. Plaintiff bought Ms. Browne's company and employed her for a time, and now asserts ownership – and infringement by Defendants – of the CELTIC WOMAN mark.[1]

Plaintiff's lawsuit and motion are a meritless attempt to retaliate against Ms. Browne for her continued commercial and creative success. The motion for preliminary relief fails, for five independent reasons:

---

[1]    For the limited purposes of this motion, Defendants do not dispute Plaintiff's ownership of CELTIC WOMAN. It is questionable whether Plaintiffs actually have any bona fide rights in CELTIC WOMAN, given that – among other reasons – Plaintiff has not paid Ms. Browne what it contractually promised when it bought her business in 2004. *See* Declaration of Sharon Browne ("Brown Decl.") ¶¶ 6-9 (Feb. 6, 2008). Defendants reserve all rights to pursue ownership of CELTIC WOMAN in any appropriate forum, including through the courts of Ireland or through counterclaims in this action.

*First*, Defendants have rendered the motion moot by voluntarily withdrawing the uses that Plaintiff seeks to enjoin.  At the time the motion was filed, the working title of Defendants' show was CELTIC MAN IN CELTIC THUNDER, and certain promotional materials referred to the show as coming "from the creator of CELTIC WOMAN," i.e., Ms. Browne.  The main stated goal of the motion (Pl. Mem. 19-31) was to stop Defendants from using CELTIC MAN in connection with the CELTIC THUNDER show.  ***Defendants voluntarily have committed not to use CELTIC MAN, even though it is a mark that Defendants originated and that Plaintiff has never used.***  The other stated goal of the motion (Pl. Mem. 31-32) was to stop Defendants from making trademark references to Sharon Browne as the "creator" of CELTIC WOMAN.  ***Defendants voluntarily have committed not to refer to Ms. Browne as CELTIC WOMAN's "creator," even though it would be well within their rights to make this factually accurate description.***  Accordingly, there is nothing left for the Court to enjoin.

*Second*, Plaintiff's motion should be denied because it comes too late.  Plaintiff knew about Defendants' possible uses of CELTIC MAN and CELTIC WOMAN for almost a year before bringing this lawsuit and motion.  Under the doctrine of laches, even a much shorter delay would be fatal as a matter of law to any effort to obtain preliminary relief in a trademark dispute.  Because the delay demonstrates that there is no urgency to the motion, Plaintiff cannot prove irreparable harm.

*Third*, the motion fails for the most basic reason of all:  Plaintiff can show no likelihood of success because there simply is no trademark infringement.  Following Defendants' voluntary adjustments to their branding and marketing, the only usage that

2

even remains for the Court to consider is this cover art for the CD and DVD of CELTIC

THUNDER:



The artwork confirms that Defendants are not currently making any reference at all to

CELTIC MAN, nor are they making any reference to Ms. Browne as "creator" of

CELTIC WOMAN. The only reference to CELTIC WOMAN is the small plain-text

legend at the top, "FROM THE ORIGINAL PRODUCER OF CELTIC WOMAN." This

phrase specifically references the *past* nature of Ms. Browne's connection to CELTIC

WOMAN, rather than suggesting any current endorsement by or affiliation with Plaintiff

as would be necessary to support a trademark claim. It is a factually accurate statement

and a fair use. It cannot possibly support preliminary relief or any relief at all.

   *Fourth*, just as Plaintiff cannot satisfy the test of showing likelihood of success, it

cannot satisfy the alternative standard of showing that the balance of hardships is in its

favor. On the contrary, the balance of hardships in this matter strongly favors Defendants

and calls for denial of the motion. What is at stake for Defendants is nothing less than

their ability to make a living by ensuring a successful rollout of CELTIC THUNDER.

22665344v1

Because Defendants have already addressed Plaintiff's stated concerns by revising their marketing materials and changing the name of their show, CD and DVD, Plaintiff cannot point to any hardship that it would face in the absence of an injunction. The only practical effect of an injunction would be to further impede the legitimate rollout of CELTIC THUNDER.

*Fifth*, the motion fails because Plaintiff's conduct constitutes a classic example of unclean hands:

- Plaintiff never bought any rights to CELTIC MAN from Ms. Browne as it falsely claims. Plaintiff also has never made any effort to use CELTIC MAN except as a bludgeon in this lawsuit. Plaintiff's own show of male Irish singers uses the very different name THE HIGH KINGS rather than CELTIC MAN.

- CELTIC WOMAN is at best a weak and descriptive mark, and Plaintiff cannot seriously claim a right to control variants based on gender as it contends here. Defendants are not even using CELTIC WOMAN, except to fairly and truthfully describe Ms. Browne as "original producer" of that earlier show.

- This lawsuit is merely Plaintiff's attempt to export to the United States the hardball tactics it previously has employed against Ms. Browne in Ireland. Plaintiff has denied Ms. Browne substantial compensation that she is contractually due, and it has engaged in corporate mismanagement that Ms. Browne has challenged before the Irish authorities.

Simply put, this lawsuit is not an exercise in legitimate trademark protection. It is an act of retaliation by Plaintiff against its former colleague Ms. Browne. The motion for a preliminary injunction should be denied.

4

**Statement of Facts**

1.       Sharon Browne's creation of CELTIC WOMAN.

In early 2004, Sharon Browne created and produced a musical show called CELTIC WOMAN that featured Irish female singers from Ms. Browne's Celtic Collections record label.  CELTIC WOMAN became a major hit on U.S. public television, in CDs and DVDs, and in live performances.  There can be no doubt that Ms. Browne was in every sense the creator – the originator, the driving force – behind CELTIC WOMAN.  She not only invented the basic concept, but brought in David Kavanagh as a financier and David Downes as musical director.  Messrs. Kavanagh and Downes are both now affiliated with Plaintiff.  Contemporaneous documents issued and approved by Plaintiff expressly described Ms. Browne as "creator" and "producer" of CELTIC WOMAN.  Browne Decl. ¶ 5 & Exs. A & B.  Even in its motion, Plaintiff – straining to avoid using the word "creator" – credits Ms. Browne with "design[ing] the concept" for CELTIC WOMAN.  Pl. Mem. 5.

In July 2004, Ms. Browne sold her business to Liffey Records, which in turn assigned the rights in CELTIC WOMAN to Plaintiff.  Ms. Browne continued to work with Liffey Records and Plaintiff through 2006, when they had a falling out and Ms. Browne moved on to pursue new and independent ventures.  Browne Decl. ¶¶ 6-9.  Ms. Browne has yet to be fully compensated for the sale of her business or for the share of CELTIC WOMAN profits that is due to her contractually.  Browne Decl. ¶¶ 7-8.  Ms. Browne also has strongly objected to Plaintiff's financial management and corporate governance of an Irish corporation on whose board she formerly sat.

5

2.    Ms. Browne's Development of Her New Show.

Well before she sold her business to Liffey Records, Ms. Browne had the idea for a second musical show, to be called CELTIC MAN, that would feature male vocalists in the Celtic tradition.  Ms. Browne never sold or assigned this idea or the CELTIC MAN mark.  Nor did either she or Liffey make any effort to develop CELTIC MAN while Ms. Browne worked at Liffey.  After her resignation as an employee, Ms. Browne decided to bring that idea to fruition.  Browne Decl. ¶ 11.  She founded a new company and began laying the groundwork for her new show.  Browne Decl. ¶ 13.

Ms. Browne's new show originally used the working title CELTIC MAN IN CELTIC THUNDER.  Plaintiffs brought this lawsuit with less than eight weeks remaining before the public television debut and the CD and DVD release of Ms. Browne's new product.  Ms. Browne responded by making a practical business decision. To smooth the path of the U.S. rollout, and to simplify life for her public television partners and her record company, she adjusted her branding and marketing:

- The television show, CD and DVD are all now known simply as CELTIC THUNDER rather than CELTIC MAN IN CELTIC THUNDER.  Browne Decl. ¶ 15.  Defendants are eliminating any and all references to CELTIC MAN anywhere, including connection with the upcoming public television broadcast or in the content or packaging for the DVD and CD.

- Promotional references to the new products as "From the Creator of Celtic Woman" are being eliminated.  The CD and DVD for general release now include a small legend on the cover, truthfully stating that they are "From the Original Producer of Celtic Woman."  No reference at all to CELTIC WOMAN appears on the CD and DVD for PBS audiences.  Browne Decl. ¶ 16.

6

These changes are firm and irrevocable.  Browne Decl. ¶ 17.  Despite Defendants'

voluntary changes, Plaintiff has refused to drop its preliminary injunction motion.

### <u>Argument</u>

Plaintiff has not shown, and cannot show, either (1) a likelihood of irreparable

injury or (2) that it is likely to succeed on the merits or that the balance of hardships tip

decidedly in its favor.  *Federal Exp. Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173

(2d Cir. 2000).  The motion for preliminary injunction therefore should be denied.

**I.     Defendants' Voluntary Revision Of Their Business Plans Makes The Motion
        Moot**

Defendants have committed to no longer use the CELTIC MAN mark and have

demonstrated this commitment by removing all references to CELTIC MAN wherever

possible.  This moots the request for injunctive relief because (1) "there is no reasonable

expectation that the alleged violation will recur" and (2) "interim relief or events have

completely and irrevocably eradicated the effects of the alleged violation." *Granite State

Outdoor Adver., Inc. v. Town of Orange, Connecticut*, 303 F.3d 450, 451-52 (2d Cir.

2002) (motion for preliminary injunction was moot where town had altered its challenged

regulations).

The Celtic Thunder Parties have taken affirmative steps to ensure that CELTIC

MAN will not be used in connection with the Celtic Thunder musical production.  *See

Consumers Union of United States v. gen. Signal Corp,* 724 F.2d 1044, 1053 (2d Cir.

1983) (holding motion for  preliminary injunction moot where defendant not only

promised to change the challenged advertisement but also had provided evidence that it

7

had already done so). Defendants have already made arrangements with their record label to ensure that the CD and DVD are entitled simply "Celtic Thunder" and do not utilize CELTIC MAN. Browne Decl. ¶ 17. They have stripped every broadcast, DVD, CD or other promotional material of any reference to CELTIC MAN. The Celtic Thunder Parties have no plans to further develop the CELTIC MAN mark, *id.*, and their demonstrated resolve to avoid any reference to CELTIC MAN indicates that there is no likelihood of reversion. *See Organizational Techs., Inc. v. Dun & Bradstreet Corp. Found.*, 44 U.S.P.Q.2d 1533 (S.D.N.Y. 1997) (denying injunction barring future use of mark because "[t]here is no need . . . to curtail behavior that shows no sign of recurring").

Plaintiff's request for preliminary relief is therefore moot.

## II.    Plaintiff's Nearly Year-Long Delay In Seeking Relief Confirms The Lack Of Irreparable Harm

Under the doctrine of laches, Plaintiff's substantial delay in seeking a preliminary injunction fatally undermines its argument that it faces irreparable harm. If there were truly any urgency to Plaintiff's claims, it would not have waited so long before filing this motion. Plaintiff was aware of Ms. Browne's plans to develop a new production entitled "Celtic Man" since at least April 2007, but it waited until January 10, 2008 to seek a preliminary injunction. *See* Pl. Mem. at 11. *See also Citibank, N.A. v. Citytrust,* 756 F.2d 273, 277 (2d Cir. 1985) (denying preliminary injunction motion after ten-week delay because "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief"); *Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F.Supp.2d 432 (S.D.N.Y. 2003) (finding no

8

irreparable harm where plaintiff filed preliminary injunction motion four months after settlement negotiations ceased).

Plaintiff's last pre-lawsuit communication to Ms. Browne took place on November 2, 2007.  Pl. Mem. at 15.  The subsequent ten-week delay before commencement of this case makes it legally untenable for Plaintiff to claim irreparable harm.  *See Citibank*, 756 F.2d at 276 (finding that 10-week delay suggests no irreparable injury); *Gidatex, S.r.L. v. Campaniello Imports, Ltd*., 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.").

The apparent purpose of Plaintiff's delay was to time this motion for maximum disruption to the Celtic Thunder Parties' broadcasting and promotional activities.  *See Gidatex*, 13 F. Supp. 2d at 420 "[I]nexcusable delay in trademark cases is most likely when . . . the owner of the mark as has times the request for injunctive relief so as to inhibit competition.").  Plaintiff waited to sue until just six weeks before the CD and DVD release and eight weeks before the production's first major television broadcast. *See Citibank*, 756 F.2d at 276 (finding no irreparable harm where plaintiff did not bring suit until after defendant had already opened a branch in its territory).  Defendants have already agreed to rename their work CELTIC THUNDER, precisely because the issuance of a preliminary injunction would be ruinous for the February 2008 CD/DVD release and the March 2008 public television broadcast.  Plaintiff's calculated effort to block Defendants' introduction of a new production into the market belies its claim of irreparable harm.

9

Because Plaintiff has inexcusably delayed the filing of its motion for preliminary injunction, it cannot show a likelihood of irreparable harm in the absence of a preliminary injunction.  Its motion should therefore be denied.

### III.    Plaintiff Is Not Likely To Succeed On The Merits

Plaintiff cannot possibly satisfy the core requirement for preliminary relief: a showing of likely success on the merits.  This is because no trademark infringement is occurring.  The specific business plans by Defendants that prompted the motion have been revised to eliminate the uses that Plaintiff sought to enjoin.  The sole remaining reference to either CELTIC MAN or CELTIC WOMAN – apart from incidental biographical references to Ms. Browne's past association with CELTIC WOMAN – is the statement on the CD and DVD cover, "FROM THE ORIGINAL PRODUCER OF CELTIC WOMAN."  That statement cannot support a preliminary injunction or any other relief.

Sharon Browne is entitled to reference the CELTIC WOMAN mark to accurately describe her past role with that show and its associated products.  The description of her as CELTIC WOMAN's "original producer" is fully protected as a non-confusing, nominative fair use under the three-part test described in *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006) (quoting *New Kids on the Block v. News Am. Pbl'g, Inc.*, 971 F.2d 302, 308 (9th Cir.1992) (newspaper entitled to use NEW KIDS mark to conduct survey on musical group New Kids on the Block)).

10

*First*, Ms. Browne's former production "is not readily identifiable without use of the trademark" CELTIC WOMAN.  *Merck*, 425 F. Supp. at 413.  There is no simple way to convey Ms. Browne's past association except to say "CELTIC WOMAN", and the law does not require her to find a contorted substitute.  *See Playboy Enter., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) (defendant entitled to use PLAYMATE mark to describe herself as "Playmate of the Year '81"; defendant need not describe herself as "nude model selected by Mr. Hefner's magazine as its number-one prototypical woman for the year 1981").

*Second*, Ms. Browne uses "only so much of the [CELTIC WOMAN] mark . . . as is reasonably necessary to identify" her former production.  *Merck*, 425 F. Supp. at 413.  In the artwork for the Celtic Thunder CD and DVD, CELTIC WOMAN is displayed in a small, generic font and is no way stylistically set off from its surrounding text.  *See* Ex. L to Browne Decl.  Ms. Browne is using only so much of the mark as is necessary – the words CELTIC WOMAN alone – to refer to her former role with that production.  *See Brother Records v. Jardine,* 318 F.3d 900, 908 (9th Cir. 2003) (holding second fair use element satisfied where defendant did not use distinctive BEACH BOYS logo);  *New Kids*, 971 F.2d at 308 (observing that an auto shop would be entitled to display word "Volkswagen" so long as it did not use VOLKSWAGEN's distinctive lettering or encircled "VW" emblem).

*Third*, Ms. Browne "[does] nothing, in conjunction with the mark, [to] suggest sponsorship or endorsement" by Plaintiff.  *Merck*, 425 F. Supp. at 413.   On the new CELTIC THUNDER CD and DVD, CELTIC WOMAN is only a fraction of the size of

11

the CELTIC THUNDER title and is no larger than the accompanying words "from the original producer of." *Compare Brother Records*, 318 F.3d at 908 (finding suggestion of sponsorship where defendant displayed BEACH BOYS more boldly and prominently than "Family and Friends") *with Kassbaum v. Steppenwolf,* 236 F.3d 487 (9th Cir. 2000) (finding no likelihood of confusion as to source or sponsorship from minimized reference to "formerly of STEPPENWOLF" beneath the larger "World Classic Rockers").

The mark is used solely to indicate that the producer of Celtic Thunder is the former producer of CELTIC WOMAN, and it is unreasonable to presume that Celtic Woman Ltd. sponsors or endorses an individual who describes her relationship to CELTIC WOMAN in historical terms. *Maurag, Inc. v. Bertuglia*, 494 F.Supp.2d 395, 398 (E.D. Va. 2007) (noting that word "original" effectively guards against customer confusion where seller of DORALDO restaurant advertised new restaurant with phrase "original owner of DORALDO").

Because Ms. Browne only uses the CELTIC WOMAN mark to accurately describe herself as the original producer and creator of the CELTIC WOMAN production, and does nothing to indicate any continued relationship between Celtic Woman Ltd. and her current endeavors, her use is a nominative fair use not likely to cause confusion. Celtic Woman's motion to preliminarily enjoin this use must be denied.

To the extent that Celtic Woman objects to the substance of Ms. Browne's claim—that she is indeed the original producer of CELTIC WOMAN—any such objection must be summarily rejected. Ms. Browne has been referred to as both creator and producer of CELTIC WOMAN in numerous articles as well as in the liner notes of

12

CELTIC WOMAN's first CD and the original CELTIC WOMAN program.  *See* Exs.

A-D to Browne Decl.  Although careful to avoid the term "creator," Celtic Woman's own

briefing suggests that Sharon Browne "designed the concept of CELTIC WOMAN."

Pl. Mem. 5.  Any substantive objection Celtic Woman might have to Ms. Browne's

self-description is baseless.[2]

### IV.     The Balance Of Hardships Weighs Strong In Favor Of Defendants

Because the only issue that remains in dispute is Ms. Browne's self-description as

the original producer of Celtic Woman, the balance of hardships weighs decidedly in

favor of the Celtic Thunder Parties.  The Celtic Thunder Parties have decided not to use

the CELTIC MAN mark, and any alleged hardships Plaintiff claims it would have

suffered have dissipated.

Plaintiff already has prejudiced the Celtic Thunder Parties by waiting for months

to bring this motion, and as a result the Celtic Thunder Parties felt compelled for business

reasons to rename their production and adjust their marketing rather than defend their

legitimate trademark rights.  Not content with these good-faith efforts to resolve this

dispute, Plaintiff seeks further to inhibit Ms. Browne's ability to communicate accurate

biographical information about her previous success in musical production.  Ms. Browne

communicates nothing more than the truth by calling herself "the original producer of

---

[2] Much of Plaintiff's motion is devoted to a discussion of the *Polaroid* factors in
conection with purported evidence of actual confusion developed in an earlier period
when Defendants were using CELTIC MAN in connection with their new show.
Because all usage of CELTIC MAN has been voluntarily withdrawn, this evidence
lacks any significance and will not be responded to here.

Celtic Woman," and Plaintiff will suffer no cognizable harm in the absence of an injunction.

Because Plaintiff has failed to establish a likelihood of irreparable harm, a likelihood of success on the merits, or that the balance of hardships weighs decidedly in its favor, its motion for preliminary injunction should be denied. *Fed. Exp. Corp.*, 201 F.3d at 168.

## V.     Plaintiff's Unclean Hands Support The Denial Of Preliminary Relief

Plaintiff is engaged in business retaliation and not trademark protection. Its invocation of rights in CELTIC MAN is demonstrably incorrect; its overreaching effort to preclude fair use of CELTIC WOMAN is unsupportable; and its overall refusal to deal fairly and honestly with Sharon Browne does not deserve judicial endorsement. Under the doctrine of unclean hands, Plaintiff's conduct calls for denial of the preliminary injunction.

While Plaintiff depicts CELTIC MAN to this Court as a bona fide mark that it bought and plans to use, the record shows otherwise:

- Despite Celtic Woman Ltd.'s assertions otherwise (Pl. Mem. 5; Declaration of David Kavanagh ¶ 7), CELTIC MAN was never part of the sale of Celtic Collections Ltd. to Liffey Records. Browne Decl. ¶ 10. CELTIC MAN was never discussed as part of the sale, nor do the deal documents reflect any transfer of CELTIC MAN.

- Plaintiff offers no product or service of any kind called CELTIC MAN, and conspicuously does not claim to be developing any. It has registered the domain names <celticman.com> and <celticman.eu>, but the only content on <celticman.com> is a link to <celticwoman.com> while <celticman.eu> is not even publicly available. *See* Browne ¶ 19 & Ex. N.

14

- Plaintiff has made an intent-to-use application for CELTIC MAN, but at the same time has committed its resources to an all-male musical group called HIGH KINGS rather than CELTIC MAN. *See id.* Plaintiff also falsely advertises THE HIGH KINGS as coming "From the Creators of Celtic Woman" even though Ms. Browne has nothing to do with Plaintiff's new show. Browne Decl. ¶ 19.

- Plaintiff only attempted to register CELTIC MAN after it became aware that Ms. Browne intended to do a show incorporating that name. Ms. Browne filed an application to register the CELTIC MAN trademark in April 16, 2007. Two weeks later, on May 3, 2007, Plaintiff filed a trademark application for CELTIC MAN. See Ex. A to Declaration of Susan A. McMahon (Feb. 6, 2008. (trademark applications).

In short, there is no evidence that Plaintiff intends to ever use CELTIC MAN for anything but litigation leverage.

Plaintiff also has overstated, and seeks to overenforce, any rights it has with respect to CELTIC WOMAN. The argument in Plaintiff's motion is directed almost entirely at Defendants' now-abandoned use of CELTIC MAN. Pl. Mem. 19-31. The only reason this dispute remains before the Court at all is because Plaintiff has responded to Defendants' voluntary give-up of CELTIC MAN by suddenly feigning equal concern over Defendants' incidental, fair-use reference to Sharon Browne's past role with CELTIC WOMAN. That subject receives all of two pages' attention in Plaintiff's 32-page preliminary injunction brief (Pl. Mem. 31-32), and then only because at the time Defendants were using the word "creator" in conjunction with CELTIC WOMAN. That usage now also has been voluntarily given up by Defendants, in favor of "original producer."

This overaggressive assertion of trademark rights should not be rewarded, particularly because CELTIC WOMAN is not even a strong mark. Plaintiff cites

15

registrations for CELTIC WOMAN in the fields of recorded media and clothing Pl.

Mem. 8-9, yet notably omits any reference to the fields of musical performances and

television broadcasts that are at the heart of this dispute.  In these areas, CELTIC

WOMAN was *denied* placement on the Principal Register because the mark was deemed

merely descriptive of Plaintiff's goods and services.  *See* Ex. B and C to Feigelson Decl.

This deliberate exaggeration of the strength of Plaintiff's mark supports denial of its

motion.  *See Urecal Corp. v. Masters,* 413 F. Supp. 873, 195 U.S.P.Q. 93 (N.D. Ill. 1976)

(unclean hands barred injunctive relief where plaintiff misrepresented the status of its

trademark registration)*.* "Celtic" is obviously a geographically descriptive term in a

crowded field.  *See* Ex. D to Feigelson Decl. (registrations for CELTIC CHRISTMAS, A

CELTIC SOJOURN, CELTICFUSION, CELTIC STORM, COWBOY CELTIC and

THE DELTIC DIVAS).   Plaintiff's assertion that once "Celtic" is paired with "Woman"

it warrants broad protection cannot be taken seriously.  *See Gruner & Jahr USA Pub. v.*

*Meredith Corp*., 991 F.2d 1072 (2d Cir. 1993) (in finding no likelihood of confusion

between PARENTS magazine and PARENTS DIGEST, noting that plaintiff could not

prevent other publishers from using descriptive word "parents")

  This lawsuit and motion merely continue Plaintiff's larger pattern of mistreatment

of Sharon Browne.  Under the sale of Celtic Collections Ltd. to Liffey Records, Ms.

Browne was entitled to an ongoing share of the revenues associated with CELTIC

WOMAN.  She is owed $3.9 million or more under that agreement.  Browne Decl.

¶¶ 7-8.  Plaintiff (including its principals) not only has deprived Ms. Browne of millions,

but has engaged in financial mismanagement and improper corporate governance that has

compelled Ms. Browne to take matters to the Irish corporate regulatory authorities.

Browne Decl. ¶ 9.

Under these circumstances, Plaintiff should not be allowed to further exploit its trademark to unfairly limit Ms. Browne's ability to create and pursue other Celtic music opportunities. *See Worthington v. Anderson*, 386 F.3d 1314, 72 U.S.P.Q.2d 1808 (10th Cir. 2004) (barring infringement suit where plaintiff's failure to perform obligations under arbitration award was a major cause of Defendant's financial problems); *Fed. Folding Wall Corp. v. Nat'l Folding Wall Corp*., 340 F. Supp. 141 (S.D.N.Y. 1971) (barring infringement suit where plaintiff prevented Defendant from achieving sufficient sales to obtain trademark license). Because Plaintiff has unclean hands, its motion for a preliminary injunction should be denied.

17

## **Conclusion**

For all the foregoing reasons, the Court should deny Celtic Woman's motion for a preliminary injunction.

Dated: New York, New York
      February 6, 2008

                           DEBEVOISE & PLIMPTON LLP


                           By: /s/  Jeremy Feigelson_____
                               Jeremy Feigelson (JF-4963)
                               Susan A. McMahon (SM-4709)

                           919 Third Avenue
                           New York, New York 10022
                           (212) 909-6000

                           *Attorneys for Defendants Sharon Browne,*
                           *Celtic Man Ltd. and Celtic Thunder  Ltd.*

18