UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
CELTIC WOMAN LTD.,                )
                                  )
    Plaintiff,                    )
                                  )
v.                                )   Civil Action No. 08-CV-0066
                                  )
CELTIC THUNDER LTD.,              )
CELTIC MAN LTD., SHARON           )
BROWNE, WLIW LLC,                 )
ALIGN ENTERTAINMENT GROUP LLC,    )
and GUSTAVO SAGASTUME,            )
                                  )
    Defendants.                   )
———————————————————————

**PLAINTIFF CELTIC WOMAN LTD.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS**

Peter A. Herbert (PH-2581)
Eric D. Levin
Amy B. Spagnole
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Tel: (617) 345-9000

Richard S. Mandel (RM-4884)
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 790-9200

*Attorneys for Plaintiff Celtic Woman Ltd.*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     PLAINTIFF WITHDRAWS ITS MOTION TO ENJOIN DEFENDANT WLIW BASED ON ITS GOOD FAITH CESSATION OF ALL USE OF THE "CELTIC MAN" AND "CELTIC WOMAN" NAMES AND MARKS IN CONNECTION WITH THE CELTIC THUNDER SHOW ................................2

II.    THE BROWNE DEFENDANTS' USE OF PLAINTIFF'S "CELTIC WOMAN" TRADEMARK TO PROMOTE THE CELTIC THUNDER SHOW AND RELATED PRODUCTS IS A FLAGRANT INFRINGEMENT AND SHOULD BE ENJOINED ..................................................................................................3

III.   THE BROWNE DEFENDANTS' ARGUMENTS CONCERNING IRREPARABLE HARM, THE BALANCE OF HARDSHIPS, AND UNCLEAN HANDS ARE WITHOUT MERIT ........................................................................................9

      A.   Plaintiff's Application is Timely ...............................................................9

      B.   The Balance of Hardships Favors the Plaintiff as Plaintiff is Suffering Incalculable Irreparable Harm ...................................................................12

      C.   The Browne Defendants, Not the Plaintiff, Have Unclean Hands .............13

CONCLUSION ....................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

American Home Prods. Corp. v. Johnson Chem. Co.,
    589 F.2d 103 (2d Cir. 1978) ..................................................................................13

Brother Records, Inc. v. Jardine,
    318 F.3d 900 (9th Cir. 2003) ....................................................................................6

Boston Athletic Ass'n v. Sullivan,
    867 F.2d 22 (2d Cir. 1980) ....................................................................................13

Business Trends Analysts, Inc. v. Freedonia Group, Inc.,
    700 F. Supp. 1213 (S.D.N.Y. 1988) ........................................................................7

Desiderio v. NASD,
    191 F.3d 198 (2d Cir. 1999) ....................................................................................9

Firma Melodiya v. ZYX Music GmbH,
    882 F. Supp. 1306 (S.D.N.Y. 1995) ......................................................................12

Horphag Research Ltd. v. Pellegrini,
    337 F.3d 1036 (9th Cir. 2003) .................................................................................6

Kassbaum v. Steppenwolf Productions, Inc.,
    236 F.3d 487 (9th Cir. 2000) ................................................................................8, 9

Liquid Gas Enter., Inc. v. Dr. Ing. h.c.F. Porsche AG,
    8 F. Supp. 2d 398 (D.N.J. 1992) .........................................................................4, 6

Maurag, Inc. v. Bertuglia,
    494 F. Supp. 2d 395 (E.D. Va. 2007) ..................................................................8, 9

Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,
    425 F. Supp. 2d 402 (S.D.N.Y. 2006) .....................................................................4

New Kids on the Block v. News Am. Publ'g, Inc.,
    971 F.2d 302 (9th Cir. 1992) ...................................................................................4

Playboy Enter., Inc. v. Chuckleberry Publ'g, Inc.,
    486 F. Supp. 414 (S.D.N.Y. 1980) ........................................................................11

Power Test Petroleum Dist. v. Calcu Gas,
    754 F.2d 91 (2d Cir. 1985) ....................................................................................13

Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,
    324 U.S. 806 (1945) ........................................................................................................ 14

ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.,
    314 F.3d 62 (2d Cir. 2002) ............................................................................................. 11

Ryan v. Volpone,
    107 F. Supp. 2d 369 (S.D.N.Y. 2000) ........................................................................... 12

Toho Co. v. William Morrow & Co.,
    33 F. Supp. 2d 1206 (C.D. Cal. 1998) ............................................................................. 6

Tri-Star Pictures, Inc. v. Unger,
    14 F. Supp. 2d 339 (S.D.N.Y. 1998) ............................................................................. 11

United States v. W.T. Grant. Co,
    345 U.S 629 (1953) .......................................................................................................... 9

United States Jaycees v. Philadelphia Jaycees,
    639 F.2d 134 (3d Cir. 1981) .......................................................................................... 14

Volkswagen Aktiengesellschaft v. Church,
    411 F.2d 302 (9th Cir. 1992) ............................................................................................ 6

WCVB-TV v. Boston Athletic Association,
    926 F.2d 42 (1st Cir. 1991) .............................................................................................. 7

Yurman Design Inc. v. Diamonds & TimeYurman Design Inc.,
    169 F. Supp. 2d 181 (S.D.N.Y. 2001) ........................................................................... 12

**Other Authorities**

J. Thomas McCarthy on Trademarks, § 23.11 ............................................................................ 6

J. Thomas McCarthy on Trademarks, § 31.48 .......................................................................... 14

Plaintiff Celtic Woman Ltd. submits this reply brief in further support of its motion for a preliminary injunction.[1]

## INTRODUCTION

The issue before the Court does not concern Defendant Sharon Browne's right to inform the general public of her past association with the now famous CELTIC WOMAN show. Rather, it concerns Browne's attempt to inflate that right in a manner not protected by law by prominently using on the front cover of the CDs and DVDs of her entirely unrelated CELTIC THUNDER show a credit boldly proclaiming that the CELTIC THUNDER products are "FROM THE ORIGINAL PRODUCER OF CELTIC WOMAN (the "Celtic Woman Credit"). The mere placement of the highly distinctive CELTIC WOMAN trademark on the front cover of the unrelated CELTIC THUNDER CDs and DVDs has actually confused PBS industry executives and will inevitably mislead consumers to falsely conclude that the CELTIC THUNDER show is associated or affiliated with, or sponsored or endorsed by, the highly acclaimed CELTIC WOMAN show. This misleading credit will enable Browne and her companies Celtic Thunder Ltd. and Celtic Man Ltd. (the "Browne Defendants") to impermissibly trade off the hard-earned and valuable goodwill and reputation of CELTIC WOMAN, and provide the Browne Defendants with a fraudulent platform to launch their new show and related products. In turn, this will inflict devastating irreparable harm by depriving Plaintiff of exclusive control over the quality of

---

[1] In a Stipulation dated January 25, 2008, Plaintiff and Defendants Celtic Thunder Ltd., Celtic Man Ltd., and Sharon Browne agreed that Plaintiff's motion for a preliminary injunction against WLIW "shall be deemed also to have been made against [those three Defendants] on the basis of the same moving papers and exhibits submitted by Plaintiff in support of the application against WLIW." Most recently, defendant Gustavo Sagastume filed an Answer and papers in opposition to the pending motion.

products that the general public associates with it and will result in the loss of control of Plaintiff's reputation.[2]

## ARGUMENT

### I. PLAINTIFF WITHDRAWS ITS MOTION TO ENJOIN DEFENDANT WLIW BASED ON ITS GOOD FAITH CESSATION OF ALL USE OF THE "CELTIC MAN" AND "CELTIC WOMAN" NAMES AND MARKS IN CONNECTION WITH THE CELTIC THUNDER SHOW

In response to this lawsuit and Plaintiff's motion for a preliminary injunction, WLIW and its President and General Manager, Terrell Cass, promptly and thoroughly complied with Plaintiff's requests that no use be made of the names and trademarks CELTIC MAN and CELTIC WOMAN in connection with (a) WLIW's broadcasts of the CELTIC THUNDER show, (b) any of the associated products relating to the show, and (c) the advertising and promotion of the CELTIC THUNDER show and related products -- with the sole permissible exception being *incidental* references to Sharon Browne's past affiliation with CELTIC WOMAN in interviews and traditional biographical materials. See WLIW's Mem. Opp. at 2.

Unlike the Browne Defendants, WLIW has shown respect for the difference between wrongful trademark use that misleads the public as to the source or origin of an entertainment product and fair use to present biographical information in a non-misleading context. Accordingly, Plaintiff withdraws its motion for a preliminary injunction solely against WLIW.

---

[2] Even the reference on the back side of the cover of the DVD distributed at the PBS Conference in October, 2007 pronouncing that the product was **"Brought to you by .... Sharon Browne, original creator and producer of CELTIC WOMAN"** caused widespread actual confusion among industry executives many of whom believed that the product was associated with CELTIC WOMAN. See Pl.'s Opening Mem., Statement of Facts § VII.

II. **THE BROWNE DEFENDANTS' USE OF PLAINTIFF'S "CELTIC WOMAN" TRADEMARK TO PROMOTE THE CELTIC THUNDER SHOW AND RELATED PRODUCTS IS A FLAGRANT INFRINGEMENT AND SHOULD BE ENJOINED**

In stark contrast to WLIW, while the Browne Defendants represent to the Court that they have discontinued the use of the name and mark CELTIC MAN in connection with their show, at the same time they have increased exponentially the unauthorized and misleading use of the CELTIC WOMAN trademark in two injurious ways:

A.  First, the Browne Defendants boldly pronounce on the front cover of the outer packaging of non-PBS related CELTIC THUNDER CDs and DVDs that the product is "FROM THE ORIGINAL PRODUCER OF CELTIC WOMAN."

B.  Second, since Plaintiff moved for a preliminary injunction, and continuing to date, the Browne Defendants have implemented an aggressive and pervasive Internet marketing scheme that uses the CELTIC WOMAN trademark, including the Celtic Woman Credit, to advertise and promote their CELTIC THUNDER products. See Declaration of Peter A. Herbert dated February 14, 2008 ("Herbert Decl."), Exs. 1 through 15, submitted herewith. For example:

>   Bordersstores.com: "FROM THE PRODUCERS OF CELTIC WOMAN CELTIC THUNDER" (Herbert Decl., Ex. 2);
>
>   Yahoo.com: "CREATOR OF BEST SELLING IRISH MUSICAL PHENOMENON 'CELTIC WOMAN' LAUNCHES BRAND NEW SHOW [CELTIC MAN IN CELTIC THUNDER]" (Herbert Decl., Ex. 3);
>
>   CD Universe.com: "CELTIC THUNDER – FROM THE PRODUCERS OF CELTIC WOMAN CELTIC THUNDER DVD" (Herbert Decl., Ex. 4);
>
>   Amazon.com: "FROM THE PRODUCERS OF CELTIC WOMAN, CELTIC THUNDER" (Herbert Decl., Ex. 7);
>
>   Amazon.ca: "CELTIC MAN: FROM THE PRODUCERS OF CELTIC WOMAN CELTIC THUNDER (2008)" (Herbert Decl., Ex. 8).

The prominent placement of the CELTIC WOMAN mark on the front cover of CELTIC THUNDER CDs and DVDs and in the advertising and promotion of the CELTIC THUNDER show and products is designed to and will mislead consumers to believe that the CELTIC THUNDER products are affiliated or otherwise associated with CELTIC WOMAN. While any use of the famous CELTIC WOMAN mark on the front cover of Celtic entertainment products would be viewed as a source identifier by the general public, this is made even more certain here because the Celtic Woman Credit uses the source identifying phrase "**FROM THE** ORIGINAL PRODUCER OF CELTIC WOMAN." (emphasis added).

The nominative fair use doctrine advanced by the Browne Defendants, far from supporting their position, defeats it. A third party may use another's protected trademark only in extremely limited circumstances: (1) if the product or service in question is one not readily identifiable without use of the plaintiff's trademark; (2) if only so much of the mark is used as is reasonably necessary to identify the product or service; and (3) if the user does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. See, e.g., Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006); New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 308 (9th Cir. 1992); Liquid Gas Enter., Inc. v. Dr. Ing. h.c.F. Porsche AG, 8 F. Supp. 2d 398, 402 (D.N.J. 1992). The Browne Defendants fail all three elements.

As to the first and second requirements, the Browne Defendants have absolutely no need to reference Plaintiff's CELTIC WOMAN mark, or any portion thereof, on the outer packaging of CDs and DVDs in order to readily identify their CELTIC THUNDER products to the public. Those products are readily identifiable without *any* reference to the CELTIC WOMAN mark.

Moreover, Browne may identify herself without any reference to Plaintiff's CELTIC WOMAN mark by simply stating that the CELTIC THUNDER show is "From Producer Sharon Browne."

Similarly, the use of CELTIC WOMAN on the CELTIC THUNDER packaging violates the third fair use requirement by prominently using a mark unrelated to the source or origin of the CELTIC THUNDER products that falsely suggests sponsorship or endorsement by the Plaintiff Celtic Woman Ltd. and its CELTIC WOMAN show.

The Browne Defendant's tactics have caused massive actual confusion. For example, the promo DVD using the former group name "CELTIC MAN" coupled with the back cover credit "Brought to you by ... SHARON BROWNE, original creator and producer of CELTIC WOMAN" caused widespread actual confusion among the PBS delegates at the PBS Development Conference who were mislead to believe that the Browne Defendants' CELTIC THUNDER show was associated with the Plaintiff and the CELTIC WOMAN show. See Pl.'s Opening Mem., Statement of Facts § VII. Similarly, actual confusion has resulted on the Internet from the Browne Defendants' widespread misleading use of the CELTIC WOMAN mark in a manner that misrepresents CELTIC WOMAN as the source of the CELTIC THUNDER product. See discussion p.3, supra. For example, on the Regorecords.com website, the CELTIC THUNDER CDs and DVDs are actually *included among the CELTIC WOMAN CDs and DVDs* that constitute the CELTIC WOMAN Collection (Herbert Decl., Exh. 11). On the Amazon.com website, the CELTIC THUNDER DVD, credited as "**From the Producers of Celtic Woman**" is included among what is referred to as "The most popular items in Celtic Woman." (Herbert Decl., Exh. 12).

Accordingly, the nominative fair use doctrine does not protect the Browne Defendants' misuse of Plaintiff's CELTIC WOMAN trademark. See, e.g., Brother Records, Inc. v. Jardine,

318 F.3d 900 (9th Cir. 2003) (nominative fair use rejected where former Beach Boy member Al Jardine's use of the Beach Boys trademark to advertise his new band suggested sponsorship or endorsement by the Beach Boys and such use caused actual consumer confusion); Liquid Glass Enter., 8 F. Supp. 2d at 404 (granting preliminary injunction against seller of car care products who used Porsche trademark to advertise its products – "Liquid Glass's advertisements could mislead the public into believing that Porsche endorsed Liquid Glass's products or at least approved of their use on Porsche automobiles"); Toho Co. v. William Morrow & Co., 33 F. Supp. 2d 1206 (C.D. Cal. 1998) (rejecting nominative fair use defense and issuing preliminary injunction against publishing company's unauthorized use of plaintiff's GODZILLA trademark on the front cover of a book created a likelihood of confusion regarding the source of the book).

If the Browne Defendants' fraudulent use is permitted, in a blink of an eye, the patently misleading Celtic Woman Credit will appear on all CELTIC THUNDER merchandise, in opening screen credits in CELTIC THUNDER CDs and DVDs, on the CELTIC THUNDER websites, in advertisements and promotions of the CELTIC THUNDER CDs and DVDs, and in connection with CELTIC THUNDER live tours, including on billboards, marquees, posters, signage, press releases, and Internet ad words, search terms, and metatags.[3]  Plaintiff beseeches the Court not to permit this deceptive practice that will irreparably injure the goodwill and reputation that CELTIC WOMAN has acquired over the years.

Examples of permissible nominative fair use are where an independent automotive shop advertises that "we repair VWs," or where a TV station advertises that it would be covering the "Boston Marathon." J. Thomas McCarthy, McCarthy on Trademarks, § 23.11 (citing Volkswagen Aktiengesellschaft v. Church, 411 F.2d 302 (9th Cir. 1992); WCVB-TV v. Boston

---

[3] See Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1041 (9th Cir. 2003) (defendant's use of owner's trademark in metatag for website not a nominative fair use because it was likely to cause confusion).

Athletic Association, 926 F.2d 42 (1st Cir. 1991)). In these cases, unlike here, the use of another's trademark was absolutely *necessary* to describe the products or services being offered and suggests no sponsorship or endorsement by the trademark owner.

"Fair use" might also include proper and non-misleading use of another's trademark to truthfully describe one's own past professional affiliations *where such biographical material is customarily found.*[4] Business Trends Analysts, Inc. v. Freedonia Group, Inc., 700 F. Supp. 1213 (S.D.N.Y. 1988) (defendant able to use plaintiff's trade name and trademark in the description of defendant's previous work experience with plaintiff if such use is accurate and presented without undue emphasis). Here, by contrast, the Browne Defendants have placed the Celtic Woman Credit on the front of products, not where biographical information is traditionally found. Moreover, the Celtic Woman Credit does not even mention Sharon Browne by name, and thus clearly does not even constitute "biographical" information.

Therefore, the proper place for Sharon Browne to describe her past relationship with the CELTIC WOMAN is not on the front cover of unrelated CELTIC THUNDER products, but in a traditional biographical statement placed where such information is customarily found -- in the liner notes found inside the packaging of CDs and DVDs, in the biography section of playbills and programs distributed at live theatrical performances, or in biographies that are maintained on personal websites. See, for example, Browne's biographical description of her professional

---

[4] An example of that accurate and ethical practice is found in the case of the famous Irish theatrical production performed and known worldwide as "Riverdance," featuring the star Michael Flatley. When Michael Flatley subsequently took to the stage in a new show entitled "Lord of the Dance," a show that he produced and in which he was the featured performer, the outer packaging for the "Lord of the Dance" DVD made no reference to his former association with the famous "Riverdance" production. See Herbert Decl., Exs. 16, 17. In other words, unlike the Browne Defendants, Flatley did not attempt to launch his new show on the coattails of his prior production, with which he had no current affiliation.

history in the Souvenir Program of the first CELTIC WOMAN show "Celtic Woman Concert," (Browne Decl., Ex. B).

The Browne Defendants cite to two cases to support their position that the Celtic Woman Credit will not cause confusion, namely Kassbaum v. Steppenwolf Productions, Inc., 236 F.3d 487 (9th Cir. 2000) and Maurag, Inc. v. Bertuglia, 494 F. Supp. 2d 395 (E.D. Va. 2007). These cases are inapposite.

In Kassbaum, the defendant Nicholas Kassbaum a/k/a Nick St. Nicholas, a former member of the band Steppenwolf, was permitted to use the phrase "Original Member of Steppenwolf," on advertising materials for a new band called "World Classic Rockers," made up of various musicians all of whom were former members of different musical groups. The accused advertisements did not single out Kassbaum as the sole source or origin of any product, as the Browne Defendants do here. Rather, the reference was included in promotional literature that made incidental biographical references to all of the band members and their former groups. The advertisement clearly stated that the members were no longer associated with their former bands, and often used the word "formerly" to indicate so. Even in that context, the Court was sensitive to point out that any substantial disproportion between the size of the name of the former band and the words "formerly of" might cause likelihood of confusion sufficient to support a claim under the Lanham Act. Kassbaum, 236 F.3d at 494 n.6.

Similarly, in Maurag, while the court found the defendant's use of the phrase "former owner of Duraldo's" and "original owner of Duraldo's" in connection with the advertising of defendant's new restaurant was a fair use, in this case there was "simply no evidence that

defendant used the accused phrases for the purpose of luring customers into his restaurant under false pretenses."[5] By contrast, this is exactly what Browne seeks to do here.

The Browne Defendants' current and proposed use of the Celtic Woman Credit pronouncing that the CELTIC THUNDER product is "FROM THE PRODUCER OF CELTIC WOMAN," "FROM THE PRODUCERS OF CELTIC WOMAN" or "FROM THE ORIGINAL PRODUCER OF CELTIC WOMAN" is a far cry from the incidental and accurate biographical uses permitted in Kassbaum and Maurag that do not mislead the public as to the source or origin of the products in issue.[6]

### III. THE BROWNE DEFENDANTS' ARGUMENTS CONCERNING IRREPARABLE HARM, THE BALANCE OF HARDSHIPS, AND UNCLEAN HANDS ARE WITHOUT MERIT

The Browne Defendants' contentions that an injunction should be denied on the grounds that *(i)* Plaintiff will not suffer irreparable harm, *(ii)* the balance of hardships weigh against the Plaintiff, and *(iii)* Plaintiff has unclean hands, are without merit.

#### A. Plaintiff's Application is Timely

The Browne Defendants are incorrect that Plaintiff's application for preliminary relief is untimely. Browne Defs.' Mem. Opp. at 8. Defendants entered the *United States* market with

---

[5] The Browne Defendants also rely on the Maurag case to contend that the Celtic Woman Credit "specifically references the *past* nature of Ms. Browne's connection to CELTIC WOMAN, rather than suggesting any current endorsement by or affiliation with Plaintiff." Browne Defs.' Mem. Opp. at 3 (emphasis in original). This is not true. The Celtic Woman Credit does not use the phrase "former producer." The word "original" means "belonging or pertaining to the origin or beginning of something" or "arising or proceeding independently of anything else." See Dictionary.com. "Original" does not mean "past" or "former."

[6] Contrary to the Browne Defendants' argument, Plaintiff's Motion for a preliminary injunction is not "moot." Even if the Browne Defendants ceased all infringement of Plaintiff's trademark (which they have not), this would not moot this lawsuit because the Browne Defendants would be free to return to the infringing conduct at any time. See, e.g., United States v. W.T. Grant. Co, 345 U.S 629 (1953) (where corporation said it eliminated illegal antitrust practice after being sued by the United States, the Supreme Court held that the case was not moot because it was "free to return to his old ways"); Desiderio v. NASD, 191 F.3d 198 (2d Cir. 1999) (where prospective broker sought declaratory judgment regarding constitutionality of NASD rule, and rule was subsequently changed, case was not moot because defendant failed to show there "is no reasonable expectation that this rule will ever be reinstated").

their CELTIC MAN show in *October 2007* at the PBS Development Conference. Prior to that time, Plaintiff had taken various steps to stop Browne's wrongful conduct in *Ireland* – sending cease and desist letters regarding her development of the CELTIC MAN show in Ireland and objecting to the registration of Celtic Man Ltd. as a company in Ireland. See Pl.'s Opening Mem., Statement of Facts § VII, at 11-12. When Plaintiff first learned that the Defendants began using the CELTIC MAN and CELTIC WOMAN marks in the United States in October 2007, Plaintiff acted quickly by consulting with attorneys in the United States and investigating and gathering facts and relevant documents. Moreover, Plaintiff warned Browne to cease her infringement on November 2, 2007, see Kavanagh Decl., ¶ 56, Ex. 24 (Email from David D'Urbano to Sharon Browne dated 11/2/07), and was assured by Browne that "*there will be no association with Celtic Woman and my new show*" on November 4, 2007. Kavanagh Decl. ¶ 56, Ex. 25 (Email from Sharon Browne to David D'Urbano dated 11/4/07) (emphasis added). In reliance upon Browne's assurance not to associate Celtic Woman with her new show, Plaintiff withheld initiating legal proceedings that appeared would not be necessary, until December 11, 2007 when Browne issued a major press release announcing the CELTIC MAN performing group and stage show as coming from the "Creator of the Best Selling Irish Musical Phenomenon 'Celtic Woman' . . . ." Kavanagh Decl., Ex. 27. Plaintiff then took immediate action by preparing and filing this lawsuit on January 4, 2008 and its motion for a preliminary injunction including supporting declarations and exhibits on January 9, 2008.

The Browne Defendants' "laches" argument is equally without merit as Plaintiff's trademark claim in the United States did not become ripe until its rights were violated in the owner's territory, in this case, ***in the United States***. Conversely, a U.S court would not have had jurisdiction to enjoin the preparatory activities of the Browne Defendants in *Ireland*. It is well-

established that an owner has no obligation to sue a potential infringer until the owner "has a provable infringement claim." ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62, 65 (2d Cir. 2002) ("the primary rationale is that a plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that the defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim"); see also Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 362 (S.D.N.Y. 1998) (no obligation to sue until it was clear that defendant definitely intended to use the infringing title and produce the movie – "[plaintiffs] filed suit after it became apparent that defendants intended to proceed with plans to produce [the challenged movie].  Bringing the suit prior to then would have been premature, thus Plaintiff's failure to do so cannot be laches."); Playboy Enter., Inc. v. Chuckleberry Publ'g, Inc., 486 F. Supp. 414 (S.D.N.Y. 1980) (rejecting laches defense and granting preliminary injunction where plaintiff filed suit two months after defendants announced publication of English language product, reasoning that "parties should not be encouraged to sue before a practical need to do so has been clearly demonstrated").

Accordingly, the earliest date on which Plaintiff's trademark claim could have become ripe is October 2007, when the Defendants entered the United States market with their CELTIC MAN show at the PBS Development Conference. Moreover, the Browne Defendants' laches argument ignores the effect of Browne's misleading assurance to the Plaintiff that "there will be no association with Celtic Woman and my new show" on November 4, 2007.  Once Browne violated her promise by issuing the December 11, 2007 press release, Plaintiff moved swiftly to enjoin the Defendants.  There was no "unexplained delay" that justifies the denial of preliminary relief.  See, e.g., Yurman Design Inc. v. Diamonds & TimeYurman Design Inc., 169 F. Supp. 2d

181 (S.D.N.Y. 2001) (granting preliminary injunction where 4 months passed between learning of infringement and filing of motion for injunction); Firma Melodiya v. ZYX Music GmbH, 882 F. Supp. 1306 (S.D.N.Y. 1995) (granting preliminary injunction where 3-4 months passed between learning of infringement and filing of motion for injunction); Ryan v. Volpone, 107 F. Supp. 2d 369 (S.D.N.Y. 2000) (granting preliminary injunction where plaintiff sent cease and desist letters during ten-week period between learning of infringement and motion for injunction).

### B. The Balance of Hardships Favors the Plaintiff as Plaintiff is Suffering Incalculable Irreparable Harm

The balance of hardships tips all the way in Plaintiff's favor. The CELTIC WOMAN trademark is recognized by millions of people and has achieved fame and secondary meaning in the United States as a source of high quality and unique entertainment. See Pl.'s Opening Mem. at 4, 6-9, 20-22. Moreover, the enormous success of the CELTIC WOMAN show resulted from a huge expenditure of time and money by Plaintiff – approximately $10 million to produce and promote CELTIC WOMAN tours, television broadcasts, CDs, DVDs, and merchandise over the last three years. See id. at 8. CELTIC WOMAN is extremely well-established in the minds of consumers, and is a source of immeasurable value to the Plaintiff.

Plaintiff suffers irreparable harm because it will lose the most valuable asset a business can have -- the right to control the quality of all products that the general public has come to associate with its company. Plaintiff has no control over the quality of the Browne Defendants' show and related products. As a consequence, the favorable goodwill and reputation of the CELTIC WOMAN mark is now at risk because it depends on the success or failure of the Browne Defendants' show with which Plaintiff has no control or affiliation. This represents the

most irreparable kind of injury that a business can suffer. Power Test Petroleum Dist. v. Calcu Gas, 754 F.2d 91, 95 (2d Cir. 1985).

By contrast, the Browne Defendants suffer no legally cognizable harm by being deprived of doing that which the law forbids -- the ability to unlawfully pass off their CELTIC THUNDER products as coming from or being endorsed, sponsored, associated or in some way affiliated with the well-known and highly acclaimed CELTIC WOMAN show. The law is clear that "the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer," Boston Athletic Ass'n v. Sullivan, 867 F.2d 22 (2d Cir. 1980), and one does not suffer harm by losing the ability to violate the trademark laws.

### C. The Browne Defendants, Not the Plaintiff, Have Unclean Hands

The Browne Defendants' three arguments that Plaintiff has "unclean hands," see Browne Defs.' Mem. Opp. at 14-17, have no support in the record.

First, they assert that "there is no evidence that Plaintiff intends to ever use CELTIC MAN for anything but litigation leverage." Id. at 15. This is a red herring. Plaintiff's trademark claim is not based on rights in the name CELTIC MAN; rather, it is based on rights in the registered trademark CELTIC WOMAN.

Second, the Browne Defendants incorrectly claim that "Plaintiff also has overstated, and seeks to over enforce, any rights it has with respect to CELTIC WOMAN," arguing that "CELTIC WOMAN is not even a strong mark." Id. at 15. As an initial matter, the fact that CELTIC WOMAN is registered on the Principal Register for CDs, DVDs, and merchandise – the very products on which the Browne Defendants seek to prominently place that mark – entitles Plaintiff to a presumption that it is an inherently distinctive and strong mark. See American Home Prods. Corp. v. Johnson Chem. Co., 589 F.2d 103, 106 (2d Cir. 1978). Moreover, the

CELTIC WOMAN mark has acquired a secondary meaning through truly extraordinary marketing efforts and success achieved by the CELTIC WOMAN show. See Pl.'s Opening Mem. at 21-22. CELTIC WOMAN is a famous and strong mark. That Plaintiff chooses to enforce it should come as no surprise to the Browne Defendants.

Third, the Browne Defendants reference a contract dispute between Browne and David Kavanagh, the CEO of Celtic Woman Ltd., that is pending in Ireland as alleged evidence of unclean hands. This contract dispute is entirely unrelated to the trademark dispute before the Court and, as other contractual disputes between the parties in the past, will be resolved by their representatives or determined in the courts of Ireland. See Supplemental Declaration of David Kavanagh. It therefore is irrelevant for purposes of considering the issue of unclean hands. See, e.g., Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814-15 (1945) ("while equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue") (internal citation omitted); United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 145 (3d Cir. 1981) (rejecting unclean hands defense in action to enjoin local chapter's use of JAYCEE mark where local chapter argued that trademark holder revoked charter to further a gender discrimination policy – the allegedly illegal act of trademark owner was too far removed from remedy of enjoining trademark infringement); J. Thomas McCarthy, McCarthy on Trademarks, § 31.48 ("Plaintiff's inequitable conduct is the basis for a valid defense only if it relates in some way to the subject matter in litigation. Misconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands.") (citing numerous authorities).

As set forth in Plaintiff's opening memorandum, it is the Browne Defendants who have acted in bad faith. After selling the rights to the CELTIC WOMAN show for over $1 million, Browne, as an employee of Plaintiff's affiliate Celtic Collections Ltd., worked with Plaintiff to develop and promote CELTIC WOMAN. Upon leaving, Browne proceeded to replicate the CELTIC WOMAN show in a male format to target the same audience, using the virtually identical name CELTIC MAN and engaging in the unauthorized and misleading use of Plaintiff's CELTIC WOMAN mark to promote the show – all with the goal of creating a false association as a platform to launch her new show. After Plaintiff repeatedly urged Browne to cease infringing the CELTIC WOMAN mark, and notwithstanding her promise to do so in November 2007, Browne reneged on her promise in December 2007, forcing Plaintiff to file this lawsuit and move for a preliminary injunction. Now, even after their co-defendant WLIW has acted responsibly by ceasing all unauthorized use of CELTIC WOMAN, the Browne Defendants have doggedly persisted in misusing the CELTIC WOMAN mark to promote their show and its related products. Their conduct is the epitome of bad faith.

## CONCLUSION

For the foregoing reasons and those stated in its opening memorandum, Plaintiff respectfully requests that the Court grant its motion for a preliminary injunction.

Dated:   New York, New York
         February 15, 2008

Respectfully submitted,

CELTIC WOMAN LTD.

By its attorneys,

_____
Peter A. Herbert (PH-2581)
Eric D. Levin
Amy B. Spagnole
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Tel: (617) 345-9000
Fax: (617) 345-9020

Richard S. Mandel (RM-4884)
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 790-9200
Fax: (212) 575-0671