**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

CELTIC WOMAN LTD.,

    Plaintiff,

        - against -

CELTIC THUNDER LTD.,
CELTIC MAN LTD., SHARON
BROWNE, WLIW LLC,
ALIGN ENTERTAINMENT LLC
and GUSTAVO SAGASTUME

    Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

CELTIC THUNDER LTD., CELTIC MAN LTD. and
SHARON BROWNE,

    Counterclaim Plaintiffs,

        - against -

CELTIC WOMAN LTD.,

    Counterclaim Defendant.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

**FILED ELECTRONICALLY**

No. 08-CV-0066 (TPG)

**AMENDED ANSWER AND**
**COUNTERCLAIMS**
**OF DEFENDANTS**
**CELTIC THUNDER LTD.,**
**CELTIC MAN LTD., AND**
**SHARON BROWNE**

Defendants and counterclaimants Celtic Thunder Ltd., Celtic Man Ltd. and

Sharon Browne ("Defendants") respond as follows to the Complaint of plaintiff-

counterclaim defendant Celtic Woman Ltd. ("Celtic Woman" or "Plaintiff"):

1.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint, except deny the allegations of the second sentence of paragraph 1 of the Complaint.

2.      Deny the allegations of paragraph 2 of the Complaint, except admit that Celtic Thunder Ltd. is a corporation organized and existing under the laws of Ireland with an office and place of business at Scarton House, Convent Road, Kildare, Ireland and owns CELTIC THUNDER, which was formerly named "Celtic Man in Celtic Thunder."

3.      Deny the allegations of paragraph 3 of the Complaint, except admit that Celtic Man Ltd. is a corporation organized and existing under the laws of Ireland with an office and place of business at Scarton House, Convent Road, Kildare, Ireland.

4.      Deny the allegations of paragraph 4 of the Complaint, except admit that Browne is a citizen of Ireland with an address of 70 Coolnevaun, Stillorgan County Dublin, Ireland; is the owner of Celtic Thunder Ltd. and Celtic Man Ltd.; is the former owner of Celtic Collections Ltd.; and was an employee of Celtic Collections Ltd. after its sale to Plaintiffs.

5.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the Complaint.

6.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the Complaint.

7.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the Complaint.

8.      Admit the allegations of paragraph 8 of the Complaint.

9.      Paragraph 9 consists of legal conclusions to which no response is required. To the extent a response may be required, deny the allegations of paragraph 9 of the Complaint.

10.      Paragraph 10 consists of legal conclusions to which no response is required.  To the extent a response may be required, deny the allegations of paragraph 10 of the Complaint.

11.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Complaint.

12.      Paragraph 12 consists of legal conclusions to which no response is required.  To the extent a response may be required, deny the allegations of paragraph 12 of the Complaint.

13.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint.

14.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint.

15.     Deny the allegations of paragraph 15 of the Complaint, except admit that the CELTIC THUNDER production is scheduled to be televised on WLIW in March 2008.

16.     Paragraph 16 consists primarily of legal conclusions to which no response is required.  To the extent a response may be required, deny the allegations of paragraph 16 of the Complaint.

17.     Deny the allegations of paragraph 17 of the Complaint.

18.     Deny the allegations of  paragraph 18 of the complaint, except admit that on July 27, 2004, Liffey Records purchased Celtic Collections Ltd. from Browne for 850,000 Euros.

19.     Admit the allegations of paragraph 19 of the Complaint.

20.     Admit the allegations of paragraph 20 of the Complaint.

21.     Deny the allegations of paragraph 21 of the Complaint.

22.     Admit the allegations of paragraph 22 of the Complaint.

23.     Admit the allegations of paragraph 23 of the Complaint.

24.     Deny the allegations of paragraph 24 of the Complaint.

25.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of the Complaint.

26.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the Complaint.

27.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 of the Complaint.

28.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 of the Complaint.

29.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 of the Complaint.

30.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 of the Complaint.

31.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 of the Complaint.

32.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint.

33.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the Complaint.

34.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 of the Complaint.

35.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 of the Complaint.

36.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 of the Complaint.

37.     Paragraph 37 consists of legal conclusions to which no response is required.  To the extent a response may be required, deny the allegations of paragraph 37 of the Complaint.

38.     Paragraph 38 consists of legal conclusions to which no response is required.  To the extent a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 of the Complaint.

39.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 of the Complaint.

40.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 of the Complaint.

41.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint.

42.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint.

43.     Deny the allegations of paragraph 43 of the Complaint.

44.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44 of the Complaint.

45.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 of the Complaint.

46.     Deny the allegations of paragraph 46 of the Complaint.

47.     Deny the allegations of paragraph 47 of the Complaint.

48.     Deny the allegations of paragraph 48 of the Complaint, except admit that the domain names <celticman.ie>,<celticman.net>, <celticmen.net>, <celticmen.eu>, <celticmen.ie> and <celticmen.mobi> were registered to promote the show formerly known as "Celtic Man in Celtic Thunder."

49.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 of the Complaint.

50.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint.

51.     Deny the allegations of paragraph 51 of the Complaint, except admit that a promotional DVD for a show called "Celtic Man in Celtic Thunder" was distributed at the Conference.

52.     Admit the allegations of paragraph 52 of the Complaint, except deny that the promotional video makes prominent use of the trademark CELTIC WOMAN.

53.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53 of the Complaint.

54.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 of the Complaint.

55.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 of the Complaint.

56.     Deny the allegations of paragraph 56 of the Complaint, except admit that the CELTIC THUNDER production is scheduled to be televised on WLIW in March 2008.

57.     Deny the allegations of paragraph 57 of the Complaint.

58.     Deny the allegations of paragraph 58 of the Complaint, except admit that EMI had informed Browne on November 2, 2007 that contractually it would be unable to partner with her on "Celtic Man in Celtic Thunder" and would have to "aggressively act to protect [its] interests in the event that [her] project infringes on the Celtic Woman

trademarks, or if there is any suggestion that Celtic Woman is promoting, presenting, supporting or otherwise connected to [her] show."

59.     Deny the allegations of paragraph 59 of the Complaint, except admit that on November 4, 2007 Browne informed Plaintiff that "other than me, there is and will be no association with Celtic Woman and my new show."

60.     Deny the allegations of paragraph 60 of the Complaint, except admit that defendants issued a press release on December 11, 2007 announcing the show "Celtic Man in Celtic Thunder."

61.     Deny the allegations of paragraph 61 of the Complaint.

62.     Deny the allegations of paragraph 62 of the Complaint.

63.     Deny the allegations of paragraph 63 of the Complaint.

64.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64 of the Complaint.

65.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65 of the Complaint.

66.     Admit the allegations of paragraph 66 of the Complaint.

67.     Deny the allegations of paragraph 67 of the Complaint.

68.     Admit the allegations of paragraph 68 of the Complaint.

69.     Deny the allegations of paragraph 69 of the Complaint, except admit that the United States Patent and Trademark Office issued a non-final Office Action requesting further explanation from Browne.

70.     Paragraph 70 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 70 of the Complaint.

71.     Paragraph 71 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 71 of the Complaint.

72.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 of the Complaint.

73.     Paragraph 73 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 73 of the Complaint.

74.     Paragraph 74 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 74 of the Complaint.

75.     Paragraph 75 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 75 of the Complaint.

76.     Defendants repeat and reallege each of their responses to paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77 of the Complaint.

78.     Paragraph 78 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 of the Complaint.

79.     Paragraph 79 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79 of the Complaint.

80.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80 of the Complaint.

81.     Paragraph 81 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 81 of the Complaint.

82.     Paragraph 82 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82 of the Complaint.

83.     Paragraph 83 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 83 of the Complaint.

84.     Deny the allegations of paragraph 84 of the Complaint.

85.     Paragraph 85 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 85 of the Complaint.

86.     Paragraph 86 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86 of the Complaint.

87.     Paragraph 87 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 87 of the Complaint.

88.     Paragraph 88 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 88 of the Complaint.

89.     Defendants repeat and reallege their responses to paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90.     Paragraph 90 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 90 of the Complaint.

91.     Paragraph 91 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 91 of the Complaint.

92.     Paragraph 92 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 92 of the Complaint.

93.     Deny the allegations of paragraph 93 of the Complaint.

94.     Paragraph 94 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 94 of the Complaint.

95.     Deny the allegations of paragraph 95 of the Complaint.

96.     Deny the allegations of paragraph 96 of the Complaint.

97.     Paragraph 97 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 97 of the Complaint.

98.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 98 of the Complaint.

99.     Deny the allegations of paragraph 99 of the Complaint.

100.    Paragraph 100 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 100 of the Complaint.

101.    Defendants repeat and reallege their responses to paragraphs 1 through 100 of the Complaint as if fully set forth herein.

102.     Paragraph 102 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 102 of the Complaint**.**

103.     Deny the allegations of paragraph 103 of the Complaint**.**

104.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 104 of the Complaint**.**

105.     Paragraph 105 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 105 of the Complaint.

106.     Deny the allegations of paragraph 106 of the Complaint.

107.     Deny the allegations of paragraph 107 of the Complaint.

108.     Paragraph 108 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 108 of the Complaint.

109.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 109 of the Complaint.

110.     Paragraph 110 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 110 of the Complaint.

111.     Paragraph 111 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 111 of the Complaint.

112.     Defendants repeat and reallege their responses to paragraphs 1 through 111 of the Complaint as if fully set forth herein.

113.     Paragraph 113 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 113 of the Complaint.

114.     Deny the allegations of paragraph 114 of the Complaint.

115.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 115 of the Complaint.

116.     Paragraph 116 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 116 of the Complaint.

117.    Deny the allegations of paragraph 117 of the Complaint.

118.    Deny the allegations of paragraph 118 of the Complaint.

119.    Paragraph 119 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 119 of the Complaint.

120.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 120 of the Complaint.

121.    Paragraph 121 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 121 of the Complaint.

122.    Paragraph 122 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 122 of the Complaint.

123.    Defendants repeat and reallege their responses to paragraphs 1 through 122 of the Complaint as if fully set forth herein.

124.    Paragraph 124 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 124 of the Complaint.

125.     Paragraph 125 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 125 of the Complaint.

126.     Paragraph 126 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 126 of the Complaint.

127.     Paragraph 127 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 127 of the Complaint.

128.     Paragraph 128 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 128 of the Complaint.

129.     Paragraph 129 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 129 of the Complaint.

130.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 130 of the Complaint.

131.    Paragraph 131 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 131 of the Complaint.

132.    Paragraph 132 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 132 of the Complaint.

133.    Defendants repeat and reallege their responses to paragraphs 1 through 132 of the Complaint as if fully set forth herein.

134.    Paragraph 134 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 134 of the Complaint.

135.    Paragraph 135 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 135 of the Complaint.

136.    Paragraph 136 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 136 of the Complaint.

137.    Paragraph 137 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 137 of the Complaint.

138.    Deny the allegations of paragraph 138 of the Complaint.

139.    Defendants repeat and reallege their responses to paragraphs 1 through 138 of the Complaint as if fully set forth herein.

140.    Paragraph 140 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 140 of the Complaint.

141.    Paragraph 141 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 141 of the Complaint.

142.    Paragraph 142 consists of legal conclusions to which no response is required.  To the extent to which a response may be required, deny the allegations of paragraph 142 of the Complaint.

143.    Paragraph 143 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 143 of the Complaint.

144.    Deny the allegations of paragraph 144 of the Complaint.

145.    Defendants repeat and reallege their responses to paragraphs 1 through 144 of the Complaint as if fully set forth herein.

146.    Paragraph 146 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 146 of the Complaint.

147.    Paragraph 147 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 147 of the Complaint.

148.    Paragraph 148 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 148 of the Complaint.

149.    Paragraph 149 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 149 of the Complaint.

150.    Deny the allegations of paragraph 150 of the Complaint.

151.    Defendants repeat and reallege their responses to paragraphs 1 through 150 of the Complaint as if fully set forth herein.

152.    Paragraph 152 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 152 of the Complaint.

153.    Paragraph 153 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 153 of the Complaint.

154.    Paragraph 154 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 154 of the Complaint.

155.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 155 of the Complaint.

156.    Paragraph 156 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 156 of the Complaint.

157.    Paragraph 157 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 157 of the Complaint.

158.    Paragraph 158 consists of legal conclusions to which no response is required. To the extent to which a response may be required, deny the allegations of paragraph 158 of the Complaint.

## Answer to Prayer for Relief

WHEREFORE, Defendants deny that Plaintiff is entitled to the relief requested or any relief.

## General Defenses

159.    Unless otherwise specifically admitted herein, each and every allegation contained in the Complaint is hereby denied.

## First Affirmative Defense

160.    The Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

161.    The claims asserted in the Complaint are barred by the doctrine of laches.

## Third Affirmative Defense

162.    The claims asserted in the Complaint are barred by the doctrine of acquiescence.

## Fourth Affirmative Defense

163.    The claims asserted in the Complaint are barred by the doctrine of unclean hands.

## Fifth Affirmative Defense

164.    The claims asserted in the Complaint are moot.

## COUNTERCLAIM PLAINTIFFS' COUNTERCLAIMS

### Summary of Counterclaims

165.    These counterclaims arise from Celtic Woman's failure to honor its agreements with Sharon Browne and its disregard for the accuracy of its advertising materials. Celtic Woman has shortchanged Ms. Browne millions of dollars in CELTIC WOMAN profits, attempted to rewrite history by disassociating her name from the CELTIC WOMAN show she created, falsely associated her with Celtic Woman's inferior new all-male production HIGH KINGS, and misappropriated the Celtic Woman mark.

These actions harmed not only Ms. Browne, but also her business entities, Celtic Man Ltd. and Celtic Thunder Ltd.

## Facts

166.    In early 2004, Sharon Browne created and produced a musical show called CELTIC WOMAN that featured Irish female singers from Ms. Browne's Celtic Collections record label.  This live show was the outgrowth of a compilation CD of Celtic Collections artists that Ms. Browne created in 2002.  The CELTIC WOMAN show became a major hit on U.S. public television, in CDs and DVDs, and in live performances.

167.    Ms. Browne was in every sense the creator of CELTIC WOMAN. Throughout the development of CELTIC WOMAN and the various CELTIC WOMAN products and services, Ms. Browne was the person principally responsible for the creative decisions.  She brought in David Kavanagh as a financier and David Downes as music director.  Mr. Kavanagh's input was financial.  Mr. Downes worked at Ms. Browne's direction.  Ms. Browne was regularly credited as the "creator" and "producer" of CELTIC WOMAN, including in publicity materials issued or approved by Plaintiff and the media.

168.    In connection with the marketing of CELTIC WOMAN, Plaintiff now falsely represents that Mr. Kavanagh and Mr. Downes are the "creators" of CELTIC WOMAN and make no mention of Ms. Browne's role in creating the production.  The CELTIC WOMAN website lists only Mr. Kavanagh, who provided solely financial input,

and Mr. Downes, who worked under Ms. Browne's direction, as the "creators" of CELTIC WOMAN.  Consumers thus are misled into believing that the creative roles of Mr. Kavanagh and Mr. Downes were more expansive than was actually the case and that Ms. Browne had no role in the creation or production of CELTIC WOMAN.

169.    Plaintiff also falsely represents that Ms. Browne is associated with its new all-male production, "The High Kings."  The High Kings website falsely states that it is from the "creators" of CELTIC WOMAN, even though Ms. Browne, the actual creator of CELTIC WOMAN, has no involvement with The High Kings production.  In fact, The High Kings is a competitor, of inferior quality, to Ms. Browne's new show, CELTIC THUNDER.

170.    On July 27, 2004, Ms. Browne sold Celtic Collections Ltd. to Liffey Records, a company owned by Mr. Kavanagh, and began building her new companies, Celtic Man Ltd. and Celtic Thunder Ltd.  This sale was memorialized in three separate documents.  First, Mr. Kavanagh, on behalf of Liffey Records, and Ms. Browne, on behalf of Celtic Collections Ltd., signed a share purchase agreement that transferred all the shares in Celtic Collections Ltd. to Liffey Records.  Second, Mr. Kavanagh and Ms. Browne signed a deal memo acknowledging that Liffey Records would provide Ms. Browne with 25 percent of the profits from the CELTIC WOMAN show and merchandise.  Third, a letter agreement on January 21, 2005 confirmed that Ms. Browne would receive this payment.  Each of these agreements was central to the consideration for the transfer of Celtic Collections Ltd. and the CELTIC WOMAN mark.

171.    Despite these agreements, Ms. Browne has never received any percentage of the profits from the CELTIC WOMAN show or merchandise – an amount that, as of March 2007, totaled approximately $3.9 million and on information and belief is larger today.  Upon information and belief, all legal and financial responsibilities with respect to these agreements have been transferred to Plaintiff.

172.    Despite violating this condition of the sale of the rights in CELTIC WOMAN, the managing directors of Liffey Records, through Celtic Collections, certified that they owned the mark when they applied for four CELTIC WOMAN trademarks in various classes on February 4, 2005.  Three of the CELTIC WOMAN applications resulted in registrations on the Principal Register: No. 3,290,299 (sound recordings in International Class 9); No. 3,290,300 (printed matter in International Class 16); and No. 3,306,488 (clothing in International Class 25).

173.    The fourth application – for entertainment services in International Class 41, the heart of CELTIC WOMAN's goods and services – was placed on the Supplemental Register (Reg. No. 3,263,503) because it was a descriptive mark and not entitled to full protection.  According to the Trademark Office, the terms "CELTIC" and "WOMAN" have clear definitions, and when the terms are combined they are merely descriptive of Celtic-themed entertainment and educational services relating to women. All of the goods covered in the three CELTIC WOMAN registrations on the Principal Register are derivative of these Celtic-themed services relating to women.

174.    Ms. Browne conducts much of her business through the companies Celtic Thunder Ltd. and Celtic Man Ltd., of which she is an owner and director.  Because these companies are competitors of Celtic Woman Ltd., and because they serve as Ms. Browne's business arm, the deceptive acts and false advertising of Plaintiff have also done them harm.

### First Counterclaim (by Ms. Browne): Breach of Contract

175.    Defendants repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

176.    The deal memo and January 21, 2005 letter agreement were enforceable contracts between Ms. Browne and Plaintiff's predecessor-in-interest.

177.    The acts of Plaintiff, as described above, constitute a breach of those contracts.

178.    The acts of Plaintiff, as described above, have damaged and are damaging Ms. Browne in an amount that cannot be ascertained at this time but is in excess of $3.9 million.

179.    By reason of the foregoing, Ms. Browne is entitled to recover after trial the damages resulting from the aforesaid acts of breach of contract.

## Second Counterclaim (by all Defendants):
## False Advertising of CELTIC WOMAN Goods and Services

(False Advertising in Violation of Section 43(a)
of the Lanham Act under 15 U.S.C. § 1125(a))

180.    Defendants repeat and reallege the foregoing paragraphs of the
Counterclaims as though fully set forth herein.

181.    The false, deceptive and misleading statements described above in
connection with the sale of CELTIC WOMAN goods and services are material and have
a tendency to deceive or confuse a significant segment of their intended audience.

182.    By engaging in the activities described above, Plaintiff has made and is
making false, deceptive and misleading statements constituting false representations in
connection with the CELTIC WOMAN goods and services it distributes in interstate
commerce in violation of 15 U.S.C. § 1125(a).

183.    Such violations have injured and will continue to injure Defendants and
the public, causing deception, confusion and damage in an amount that cannot be
ascertained at this time.

184.    Plaintiff's acts of false advertising have caused irreparable injury to
Defendants' goodwill and reputation and, unless restrained, will cause further irreparable
injury, leaving Defendants with no adequate remedy at law.

185.    By reason of the foregoing, Defendants are entitled to an injunction
restraining Plaintiff from further acts of false advertising.  Furthermore, Defendants are

entitled to recover their damages suffered by reason of Plaintiff's aforesaid acts in an amount to be determined at trial but in no event less than the amount expended in creating and disseminating the false statements and any amounts expended in remedial advertisements.

### Third Counterclaim (by all Defendants): False Advertising of HIGH KINGS Goods and Services

(False Advertising in Violation of Section 43(a)
of the Lanham Act under 15 U.S.C. § 1125(a))

186.    Defendants repeat and reallege the foregoing paragraphs of the Counterclaims as though fully set forth herein.

187.    The false, deceptive and misleading statements described above in connection with the sale of HIGH KINGS goods and services are material and have a tendency to deceive or confuse a significant segment of their intended audience.

188.    By engaging in the activities described above, Plaintiff has made and is making false, deceptive and misleading statements constituting false representations made in connection with the HIGH KINGS goods and services it distributes in interstate commerce in violation of 15 U.S.C. § 1125(a).

189.    Such violations have injured and will continue to injure Defendants and the public, causing deception, confusion and damage in an amount that cannot be ascertained at this time.

190.    Plaintiff's acts of false advertising have caused irreparable injury to Defendants' goodwill and reputation and, unless restrained, will cause further irreparable injury, leaving Defendants with no adequate remedy at law.

191.    By reason of the foregoing, Defendants are entitled to an injunction restraining Plaintiff from further acts of false advertising.  Furthermore, Defendants are entitled to recover their damages suffered by reason of Plaintiff's aforesaid acts in an amount to be determined at trial but in no event less than the amount expended in creating and disseminating the false statements and any amounts expended in remedial advertisements.

**Fourth Counterclaim (by all Defendants): Deceptive Acts and Practices**

(Deceptive Acts and Practices)

192.    Defendants repeat and reallege the foregoing paragraphs of the Counterclaims as though fully set forth herein.

193.    Plaintiff's conduct as described above is oriented and directed towards consumers and is deceptive or misleading in a material way.

194.    Defendants have suffered injury as a result of Plaintiff's conduct.

195.    Plaintiff's acts as described above constitute deceptive acts and practices in violation of N.Y. GEN. BUS. LAW § 349.

## Fifth Counterclaim (by all Defendants): False Advertising of CELTIC WOMAN Goods and Services

(False Advertising Under New York Law)

196.    Defendants repeat and reallege the foregoing paragraphs of the Counterclaims as though fully set forth herein.

197.    Plaintiff's advertising as described above in connection with CELTIC WOMAN goods and services has had an impact on consumers and is deceptive or misleading in a material way.

198.    Defendants have suffered injury as a result of Plaintiff's advertising as described above in connection with CELTIC WOMAN goods and services.

199.    Plaintiff's acts as described above constitute false advertising in violation of N.Y. GEN. BUS. LAW § 350

## Sixth Counterclaim (by all Defendants): False Advertising Of HIGH KINGS Goods and Services

(False Advertising Under New York Law)

200.    Defendants repeat and reallege the foregoing paragraphs of the Counterclaims as though fully set forth herein.

201.    Plaintiff's advertising as described above in connection with HIGH KINGS goods and services has had an impact on consumers and is deceptive or misleading in a material way.

202.    Defendants have suffered injury as a result of Plaintiff's advertising as described above in connection with HIGH KINGS goods and services.

203.    Plaintiff's acts as described above constitute false advertising in violation of N.Y. GEN. BUS. LAW § 350.

### Seventh Counterclaim (by all Defendants): Cancellation of Trademark Registrations for Fraud

(Cancellation of Registered Mark Under 15 U.S.C. §§ 1064, 1119)

204.    Defendants repeat and reallege the foregoing paragraphs of the Counterclaims as though fully set forth herein.

205.    Plaintiff's four federal trademark registrations were procured by the false representations of the managing directors of Liffey Records that they were the rightful owners of the CELTIC WOMAN mark.

206.    The managing directors of Liffey Records knew at the time they filed applications for CELTIC WOMAN mark that they had not secured ownership of CELTIC WOMAN.

207.    The above misrepresentation of ownership was material to the Trademark Office's determination to issue Plaintiff's federal registrations.

208.    Defendants have suffered injury as a result of Plaintiff's registration of these marks.

209.    Defendants seek an order pursuant to 15 U.S.C.A. § 1119 canceling Trademark Registration Nos. 3,290,299; 3,290,300; 3,306,488; and 3,263,503 in the United States Patent and Trademark Office.

### Eighth Counterclaim (by all Defendants): Cancellation of Trademark Registrations for Descriptiveness

(Cancellation of Registered Mark under 15 U.S.C. §§ 1052(e), 1119)

210.    Defendants repeat and reallege the foregoing paragraphs of the Counterclaims as though fully set forth herein.

211.    Plaintiff's three CELTIC WOMAN trademarks on the Principal Register were merely descriptive and had attained no secondary meaning at the time of their registration.  They continue to be a descriptive marks with no secondary meaning.

212.    Defendants have suffered injury as a result of Plaintiff's registration of these marks.

213.    Defendants seek an order pursuant to 15 U.S.C.A. § 1119 canceling Trademark Registration Nos. 3,290,299; 3,290,300; and 3,306,488 in the United States Patent and Trademark Office.

### PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully pray:

1.    That Plaintiff's Complaint be dismissed with prejudice.

2.      That Defendant Sharon Browne be awarded damages in an amount to be determined at trial arising from Plaintiff's breach of contract.

3.      That Plaintiff and all those acting in concert or participation with it (including, but not limited to, their officers, directors, agents, servants, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) be enjoined and restrained from:

(a)      Directly or indirectly using in commerce or causing to be published or otherwise disseminating any promotional materials or conducting any activities containing any of the false claims described in the Counterclaims, including false claims appearing in the materials referenced in the Counterclaims;

(b)      Directly or indirectly using in commerce or making any claim or statement reporting that anyone other than Sharon Browne is the creator of CELTIC WOMAN; and

(c)      Directly or indirectly using in commerce or making any claim or statement reporting that Sharon Browne, or "the creator," "creators," "the producer," or "producers" of CELTIC WOMAN, are in any way associated with the "High Kings" show, recordings, or merchandise.

4.      That Plaintiff accounts to Defendants for its profits and any damages sustained by Defendants, to the extent calculable, arising from the foregoing acts of false advertising and deceptive acts and practices.

5.      That, in accordance with such accounting, Defendants be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117 and N.Y. GEN. BUS. LAW § 349(h).

6.      That Defendants recovers their costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and N.Y. GEN. BUS. LAW § 349(h).

7.      That Defendants be awarded punitive damages pursuant to the law of the State of New York in view of Plaintiff's intentional and willful false advertising and deceptive acts and practices.

8.      That Trademark Registrations Nos. 3,290,299; 3,290,300; 3,306,488; and 3,263,503 for the trademark CELTIC WOMAN be ordered cancelled.

9.      That the clerk of the Court be ordered to certify a copy of the order and forward the order to the Director of Patents and Trademarks for appropriate entry on the records of the Patent and Trademark Office

10.     That Defendants have such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        February 20, 2008

DEBEVOISE & PLIMPTON LLP


By:   __/s/ Jeremy Feigelson__
      Jeremy Feigelson (JF-4963)
      Susan A. McMahon (SM-4709)

919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants-Counterclaimants*
*Celtic Thunder Ltd., Celtic Man Ltd. and*
*Sharon Browne and for Defendants WLIW*
*LLC and Gustavo Sagastume*

37